**Camille CANNON, Plaintiff–Appellant,**

v.

**LEVI STRAUSS & CO., Defendant–Appellee.**

No. 00–5336.

United States Court of Appeals,
Sixth Circuit.

Feb. 6, 2002.

Before MOORE and COLE, Circuit

Judges; O'MEARA, District Judge.*

O'MEARA, District Judge.

Plaintiff/Appellant Camille Cannon was an employee of the Defendant/Appellee Levi Strauss & Co. ("Levi's") in Knoxville, Tennessee, until her termination in July 1996. Ms. Cannon filed suit against her former employer alleging that she was terminated due to her carpal tunnel syndrome in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. Judge Leon Jordan initially granted summary judgment to Levi's on whether Ms. Cannon met the first two definitions of actual disability in the ADA but allowed Appellant to proceed as one "regarded as" having a disability under 42 U.S.C. § 12102(2). Ms. Cannon does not challenge that first ruling.

After Ms. Cannon amended her complaint, Levi's again moved for summary judgment. It argued that there were no material issues of fact as to whether Plaintiff was regarded as having a disability or whether Plaintiff was "otherwise qualified" for her old job, as is also required under the ADA. The district court granted summary judgment on both grounds, and Ms. Cannon timely appealed that judgment. This court now **AFFIRMS** the decision of the district court.

### I. BACKGROUND

Ms. Cannon worked as a sewing machine operator at Levi's for a period in 1992 and again from March 1995 to her termination on July 9, 1996. Her job involved sewing the zippers into jeans. Ms. Cannon appears to have met her quotas and not to have had any employment-related problems until April 1996, when she says that she first began to notice pain in

her wrists. On May 2, 1996, she reported this pain to her employer. Levi's then provided her with a list of three physicians, as it was required to do by Tennessee's workers' compensation law, and Ms. Cannon chose Dr. Jeffery Uzzle, M.D.

Dr. Uzzle first examined Ms. Cannon on May 7, 1996 and diagnosed her as having bilateral carpal tunnel syndrome with most of the symptoms in her right hand/arm. He immediately recommended that Ms. Cannon's work be restricted to non-sewing jobs and no overtime for two weeks, and it was so restricted. When Dr. Uzzle examined her again two days later, his diagnostic tests confirmed his initial diagnosis, and he continued her work restrictions. When he again saw her on June 4, Dr. Uzzle noted some improvement but still continued the work restrictions. (J.A. at 115, 117). He also at that time recommended that Ms. Cannon see another doctor, Dr. John Harrison. Ms. Cannon did meet with Dr. Harrison once, and he thought it was "medically reasonable to give her a trial of return to work." (J.A. at 191). Neither doctor recommended surgery for Ms. Cannon, but rather more conservative treatment.

Ms. Cannon again met with Dr. Uzzle on June 25, 1996. At that time, the doctor found that she had become "basically asymptomatic" and recommended a gradual return to work starting with 50% of her former sewing job, and increasing to 100% over a month-long period. (J.A. at 121, 123). He also discussed with Ms. Cannon her options: she could "1) [get] out of repetitive motion, factory-oriented work with both hands; [or] 2) risk worsening of her bilateral carpal tunnel syndrome by resuming production oriented work."

* The Hon. John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

(J.A. at 121). Ms. Cannon chose to return to her job and take the risk. *Id.*

Three days later, Dr. Uzzle conducted a "video review," which involved watching a videotape of a job at Levi's. Levi's asserts that it was a video of Ms. Cannon's job, but there is no proof of what exact job(s) it depicted. After this, Dr. Uzzle changed his position on Ms. Cannon's return to work. His notes reflect that he also considered Ms. Cannon's family history of carpal tunnel syndrome and that her symptoms had resolved on her light-duty work. At that point, he "believe[d] it is reasonable for me to recommend that she not return to repetitive motion type factory work, using the [bilateral upper extremities], due to risk of causing recurrent carpal tunnel syndrome that might lead to surgical intervention." (J.A. at 127). Accordingly, Dr. Uzzle faxed a note to Levi's that read "recommend permanent restriction—no repetitive motion use of Bilateral Hands & wrist [sic]." (J.A. at 129). Ms. Cannon now alleges that someone from Levi's contacted Dr. Uzzle between June 25 and 28 and implies that that conversation helped sway the doctor's opinion. Levi's denies that any such contact took place.

The same day that Dr. Uzzle faxed his permanent restriction to Levi's, he also called Ms. Cannon and explained his revised opinion to her. Shortly afterward, Ms. Cannon had a conversation with Carolyn Kooch at the Levi's plant. Ms. Cannon claims in her affidavit that Ms. Kooch told her she was being laid off because Dr. Uzzle said she "could not perform any factory work." (J.A. at 138). In her deposition, Ms. Cannon states she was told the reason for her lay-off was that she "may be a high risk in sewing" (J.A. at 46) and that Ms. Kooch informed her that Dr. Uzzle said she "was being laid off because of my carpal tunnel, that I was not—that I

could not do factory work." (J.A. at 49). Ms. Cannon says that she left her employment that day. *Id.*

Ms. Kooch then prepared a "notification of work status" form, dated July 9, 1996. This form stated that Ms. Cannon "[h]as perm. work restriction of no repet. motion with both hands." (J.A. at 131). Ms. Cannon signed this form, but she alleges in her appellate brief that this form was never authenticated and that it may have been blank when she signed it. (Appellant's Br. at 7).

On November 8, 1996, Ms. Cannon filed a charge of violation of the ADA with the Equal Employment Opportunity Commission (EEOC). It stated that "I was laid off because the company doctor said I was a high risk for future carpal tunnel problems." (J.A. at 133). After receiving a right-to-sue letter, Ms. Cannon commenced this action in state court. Levi's then removed it to federal district court. Judge Jordan entered summary judgment for Levi's on February 16, 2000, and Ms. Cannon timely filed this appeal on March 15 of that year.

## II. DISCUSSION

### A. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo*. *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir.2001).

A motion for summary judgment will be granted if the pleadings and all supporting documentation show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *Talley v. Bravo Pitino*

*Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). However, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. The court must view all the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984). Once the moving party discharges its burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Talley,* 61 F.3d at 1245. To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue; he must produce evidence of "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324.

## B. LAW AND ANALYSIS

In order to prevail on a claim of employment discrimination under the ADA, a plaintiff must show that "1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap." *Monette v. Electric Data Systems Corp.,* 90 F.3d 1173, 1178 (6th Cir.1996). Levi's argues that Ms. Cannon cannot create a material issue of fact with regard to either the first or second prongs of that test.

With regard to the first prong, the ADA limits its protections to those persons who are disabled. "Disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life

activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). This appeal is concerned with whether Ms. Cannon falls into the third category of "being regarded as" disabled.

The Supreme Court recently addressed that prong of disability in *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). *Sutton* teaches that one is regarded as disabled if "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Id.* at 489.

Here, the parties agree that Ms. Cannon's carpal tunnel syndrome is an impairment, and that it is her only impairment. The only major life activity that Ms. Cannon discusses is working. *Sutton* assumed without deciding that working is indeed a major life activity and found that to be substantially limited from working, a plaintiff must allege that she is unable to work in a "broad class of jobs." *Id.* at 491. The EEOC regulations on this subject are in accord with that definition, and they suggest that several factors are to be considered when determining if an individual is substantially limited in the activity of working: the geographical area in which the person may obtain employment and the number and type of jobs in that area utilizing similar training, knowledge, and skills. 29 CFR § 1630.2(j)(3)(ii)(A) and (B), *cited in Sutton,* 527 U.S. at 492.

Thus, Ms. Cannon must show that Levi's believed her to be substantially limited from the major life activity of working due to her carpal tunnel syndrome. It is clear from all the evidence that Levi's believed her unable to perform her particular job of

sewing machine operator any longer. That, however, is not enough to be substantially limited. Being unable to do a single, particular job does not rise to that level. *Sutton*, 527 U.S. at 491–93.

But Ms. Cannon argues that Levi's believed that not only was she unable to be a sewing machine operator, she was also unable to perform a wide range of work. In support of this assertion, she points mainly to her own affidavit in which she claims that Ms. Kooch told her that Dr. Uzzle said she "'could not do factory work.'" (J.A. at 138). She repeats this statement in her deposition, during which she was referring to the affidavit. (J.A. at 49). However, just a moment earlier in her deposition, she also stated, in response to the question, "what were you told the reason for the layoff was?," "That I may be high risk in sewing." This is different from the "factory work" statement. Ms. Cannon also recited in her EEOC charge that she was let go because "the company doctor said I was high risk for carpal tunnel problems." (J.A. at 133). Finally, there is the form prepared by Levi's stating that she had repetitive motion work restrictions.

Levi's argues, and the district court found, that the EEOC charge contradicts the affidavit. Ms. Cannon attempts to explain away any inconsistency by arguing that on the EEOC form she was merely articulating Levi Strauss's position as communicated to her by Dr. Uzzle. That explanation is not satisfactory. Courts need not credit contradictory statements of parties. The Supreme Court in *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), held that a sworn assertion to an administrative agency that negates a central element of an ADA claim cannot create a genuine issue as to that element without an explanation. Here, Ms. Can-non's EEOC statement negates the claim that Levi's thought she was incapable of the broad category of "factory work".

Further, Ms. Cannon offers no other evidence that Levi's thought she was prohibited from as broad a class of jobs as "factory work." To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue; he must produce evidence of "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Under that standard, Ms. Cannon cannot create a genuine issue of material fact that Levi's thought she was disabled from a class of jobs so broad as "factory work."

In the alternative, Ms. Cannon argues that she has created a genuine issue of material fact that Levi's regarded her as unable to perform jobs involving repetitive motion and that this too is a broad class of jobs. She is correct in arguing that there is a genuine factual issue about whether Levi's thought her unable to engage in repetitive motion work. The "notification of work form" on which Levi's relies to refute Ms. Cannon's statements about "factory work" indeed says that she was restricted from repetitive motion work, and Dr. Uzzle's prescription note recommends the same thing. Though her EEOC charge speaks only of injury from carpal tunnel, that impairment and repetitive movements are very closely associated with one another. And it is Appellee's own document that states the repetitive work restriction.

The question then becomes whether the category of jobs involving repetitive motion work is broad enough to "substantially limit" the major life activity of working. Ms. Cannon argues that it is and offers the affidavit of a Dr. Julian Nadolski, who

purports to be a vocational expert. There is no indication that Dr. Nadolski was ever accepted as an expert by the district court, and his statements are very general. Dr. Nadolski does not claim to have talked with Ms. Cannon about her skills and does not provide any information about the relevant job market in the Knoxville area. Therefore, this affidavit does not aid Ms. Cannon.

Levi's relies upon *McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 373 (6th Cir.1997), in which this court specifically held that a person unable to do repetitive motion factory work was not prohibited from a broad class of jobs and thus was not disabled for purposes of the ADA. This court is bound by its precedent in *McKay* that Ms. Cannon's particular limitation does not constitute a disability under the ADA. Repetitive motion factory work is simply not a broad class of jobs. *Id.* Thus, even if Levi's did think that she could not do repetitive motion work, that inability is not a disability, and so Levi's did not regard her as disabled.

This conclusion is further supported by the reasoning of the Supreme Court in its recent decision in *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* —— U.S. ——, 122 S.Ct. 681, —— L.Ed.2d —— (2002). In that case, the Supreme Court reversed a finding of summary judgment for an ADA plaintiff with carpal tunnel syndrome. The Court held that to be disabled in the major life activity of performing manual tasks, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 694. Though the Court's opinion addressed the major life activity of manual tasks, and not that of working, *id.* at 688, the opinion cited *Sutton* to emphasize that a limitation upon a major life activity must be substantial and

that the inability to do only one job did not qualify. *Id.* at 690, 693.

Finally, Ms. Cannon's reply brief relies heavily on *Ross v. Campbell Soup Co.,* 237 F.3d 701 (6th Cir.2001), for the proposition that the "regarded as" prong of disability is concerned with the employer's state of mind. That is correct, but *Ross* is distinguishable because in that case there were a series of comments and reports from the employer indicating that it thought the plaintiff was disabled, as well as a memo that referred to the plaintiff as a "back case." Here, Levi's did not view Ms. Cannon through stereotypes based on her impairment but rather followed the specific recommendations of her treating physician, the course the Supreme Court says is the correct one in *Williams,* 122 S.Ct. at 691.. And again, even though Levi's may have regarded her as unable to do repetitive motion work, that simply does not constitute a disability, so Levi's could not have regarded her as disabled.

### III. CONCLUSION

The district court's grant of summary judgment to Levi's on the ground that Ms. Cannon was not "regarded as" disabled is **AFFIRMED.** It is therefore unnecessary to address the second ground for summary judgment relied upon by the district court, that Appellant was not "otherwise qualified" for the job.