RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0215P (6th Cir.)
File Name: 02a0215p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DAVID W. MAHON,
     *Plaintiff-Appellant,*

     *v.*

No. 00-6134

CRAVEN CROWELL; JOHNNY
H. HAYES; WILLIAM H.
KENNOY; SKILA HARRIS;
GLENN L. MCCULLOUGH, JR.,
     *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 99-00673—R. Leon Jordan, District Judge.

Argued: October 25, 2001

Decided and Filed: June 28, 2002

Before: MERRITT and DAUGHTREY, Circuit Judges;
WELLS, District Judge.[*]

———————————

[*] The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

————————————

**COUNSEL**

**ARGUED:** Jay Lewis, Montgomery, Alabama, for Appellant. John E. Slater, TENNESSEE VALLEY AUTHORITY, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Jay Lewis, Montgomery, Alabama, Terry R. Smyly, Montgomery, Alabama, for Appellant. John E. Slater, Barbara S. Maxwell, Thomas F. Fine, Sr., TENNESSEE VALLEY AUTHORITY, Knoxville, Tennessee, for Appellees.

————————————

**OPINION**

————————————

MERRITT, Circuit Judge.  In this discrimination case, plaintiff David W. Mahon sues Craven Crowell, Johnny H. Hayes, William H. Kennoy, Skila Harris, and Glenn L. McCullough in their official capacities as directors of his employer, the Tennessee Valley Authority, alleging that TVA classified and fired him on account of a disability in violation of § 791 (commonly referred to as § 501) of the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 701 *et seq*.  The main questions before us boil down to two rather esoteric issues: whether the district court erred in granting summary judgment for TVA (1) because Mahon was not disabled from any "major life activity" and (2) because he does not meet the test for being "regarded as disabled" under the acts.  We hold that Mahon has not met the statutory test for being disabled, and therefore AFFIRM the district court's decision.

### I. Background

David Mahon began working as a steamfitter for TVA in 1976, becoming a full-time employee in 1986.  In 1988, he suffered a herniated disk in an on-the-job injury.  Between 1988 and 1990, he alternately worked for TVA either as a

steamfitter on "sedentary duty," meaning that on a physician's recommendation TVA restricted his bending, lifting, and climbing at work, or was laid off from work entirely and received workers' compensation under the Federal Employees Compensation Act.

Under the Federal Employees Compensation Act, TVA ultimately bears the cost of workers' compensation payments made to former employees. In the summer of 1990, in an attempt to gain some benefit from former employees then on workers' compensation, TVA established a new program, the Nuclear Reemployment Initiative ("REIN" in TVA jargon, here "the reemployment initiative" or "the program"). The program hired only laid-off TVA employees receiving workers' compensation. It provided them with clerical and assistant positions accommodating their injuries. Although described by TVA as a training program, there is little evidence it trained participants for new jobs. According to internal memos, the program was carefully designed to segregate participants from other TVA workers. Jobs in the program were made up of tasks that supervisors did not wish to perform; they were designed not to overlap with existing TVA jobs; and participants were classified for retention purposes with other program participants, not with TVA employees outside the program performing similar jobs.

In December 1990, TVA informed Mahon he could either enter the program or lose his workers' compensation payments. It also told him that if he were laid off, his workers' compensation payments would automatically resume, which at the time was true. In January 1991, he joined the program and for the next six years performed various clerical and assistant tasks at the Sequoyah Nuclear Power Plant, with the job titles "steamfitter(rehab)" and "maintenance mechanic(rehab)." In 1992, the U.S. Department of Labor's Office of Workers Compensation Programs changed its policies, so that thenceforth individuals who had received workers' compensation but were then successfully reemployed--a group including reemployment initiative participants--would be deemed rehabilitated, and

thus no longer eligible for full workers' compensation if their new jobs were eliminated.

In 1996, TVA announced it would eliminate the reemployment initiative and participants unable to secure other TVA jobs would be laid off. While applying for other jobs in TVA, Mahon discovered that, because of his participation in the program, he was on a retention register with other program participants, not with fellow employees at Sequoyah or other steamfitters, a placement which severely restricted his access to open jobs and effectively eliminated his seniority. On September 27, 1997, he lost his job in a reduction-in-force. No longer eligible for workers' compensation payments for his earlier injury, he thereafter took a non-TVA clerical position that paid much less than what he had earned at TVA.

On February 2, 1998, Mahon sued TVA in the Northern District of Alabama, alleging that it discriminated against him in violation of the Rehabilitation Act and that the reemployment initiative had been a ploy by TVA to reduce workers' compensation costs by hiring otherwise unemployable former employees receiving workers' comp, keeping them employed only until they had been established as rehabilitated, and then firing them at the first opportunity. On motion by TVA, the case was transferred to the Eastern District of Tennessee on December 15, 1999.[1] On July 31,

---

[1] Twenty-four other program participants also sued TVA in the Northern District of Alabama on grounds similar to Mahon's. The district court granted summary judgment to TVA, holding *inter alia* that "working" was not a major life activity and that none of the plaintiffs could establish they were disabled. *Mullins v. Crowell*, 74 F.Supp.2d 1067 (N.D.Ala. 1999). The Eleventh Circuit Court of Appeals partially upheld and partially reversed the district court, holding that "working" remains a major life activity under the Rehabilitation Act and that twenty-two of the twenty-four plaintiffs had presented sufficient evidence they were disabled to survive summary judgment. *See Mullins v. Crowell*, 228 F.3d 1305 (11th Cir. 2000). On January 30, 2002, following jury trials, twenty-one of the twenty-two plaintiffs won claims against TVA. *See, e.g.*, *Mullins v. McCullough*, No. CV97-BU-1897-S, slip op. at 1-3

---

Because Mahon cannot show he is disabled under the Rehabilitation Act, he cannot make out a necessary element of his *prima facie* claim. His suit against TVA thus fails.

### C.  Other Issues

The district court also granted summary judgment for TVA on the grounds that Mahon could not show he was discriminated against solely because of his disability, as it concluded is also required to make out a *prima facie* case under § 501 of the Rehabilitation Act, and that Mahon's action was barred under the Rehabilitation Act's 45-day statute of limitations, as he was classified as a "rehab" worker in 1991 and did not complain of the classification until 1997. Because we uphold summary judgment on the grounds that Mahon is not disabled under the meaning of the Rehabilitation Act and the ADA, we do not reach these issues.

### III.  Conclusion

As the district court noted, Mahon and other program participants may well have been ill-treated by TVA. But this does not state a claim under the Rehabilitation Act, which requires that a claimant be "disabled." Mahon does not meet the statutory definition of this term. The district court's decision is AFFIRMED.

527 U.S. at 489.  To run afoul of the act, then, a covered entity must hold a mistaken belief that a claimant is disabled within the meaning of the acts.  *See Ross*, 237 F.3d at 709.

Mahon has not shown that TVA regarded him as disabled under the statutes because he has not shown that TVA held any *mistaken* belief about him.  In his briefs, Mahon does not detail exactly how TVA misapprehended him, stating simply that TVA regarded him as disabled. By this he may be asserting that TVA regarded him as disabled in the concrete major life activities of sitting, standing, bending, stooping, walking, climbing, or lifting.  The only evidence tending to show this, however, is that TVA altered Mahon's work requirements to take into account his injury.  But in so doing TVA was not wrongly viewing Mahon through a stereotype of disability, "but rather follow[ed] the specific recommendations of [a] treating physician, the course the Supreme Court says is the correct one in *Williams*." *Cannon v. Levi Strauss & Co.*, 2002 WL 193891, at *6 (6th Cir. February 6, 2001) (citing 122 S.Ct. at 691).  There is thus no evidence to show that TVA regarded Mahon as significantly impaired in these major life activities.

Mahon may also be claiming that  TVA regarded him as disabled in the major life activity of working.  There is certainly evidence that TVA deliberately segregated reemployment initiative participants from its "regular" workforce, which under other circumstances could signal that TVA thought participants unable to work.  According to Mahon, however, TVA separated workers' comp recipients from other workers as part of a plan to establish falsely that program participants were rehabilitated and so no longer eligible for workers' comp.  If this claim is true, it shows that TVA did not treat Mahon differently because it mistakenly regarded him as disabled.  Rather, under Mahon's own theory TVA treated him differently because it correctly regarded him as a recipient of workers' compensation.  Thus, TVA held no mistaken views of Mahon, and he cannot show he is disabled under this prong of the act.

2000, the district court granted summary judgment to TVA on several grounds.  Mahon timely appealed.

## II.  Analysis

We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party.  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1112-13 (6th Cir. 2001).

### A.  The Rehabilitation Act and the ADA

Mahon makes his claim under § 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, which requires Federal agencies and instrumentalities to implement affirmative action plans to hire, place, and advance individuals with disabilities, and which creates a private right of action against covered entities for discrimination on the basis of disability. *See id.* at § 791(b).[2]  Although the Rehabilitation Act predates

---

(N.D.Ala. January 30, 2002).

[2]The Rehabilitation Act, and its relation to the ADA, can be confusing.  Section 791(b) of the Rehabilitation Act required all Federal agencies to implement affirmative action programs for the hiring, placement, and advancement of individuals with disabilities.  29 U.S.C. § 791(b).  Initially, courts did not read this as creating a private right of action against Federal agencies for discrimination on the basis of disability. *See Smith v. United States Postal Service*, 742 F.2d 257, 259 (6th Cir. 1984)(reviewing the history of § 501).  In 1978 Congress amended the Rehabilitation Act to create such a right, adding a new provision stating that the "remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 . . . shall be available, with respect to any complaint under section 791 of this title [§ 501]."  29 U.S.C. 794a(a)(1).

In 1992, Congress further amended the Rehabilitation Act "to ensure that the precepts and values embedded in the Americans with Disabilities Act are reflected in the Rehabilitation Act."  S. Rep. No. 102-357, at 1 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3712, 3713.  Among other changes, the Rehabilitation Act was amended so that the term "disabilities" replaced the term "handicap," and the ADA standards used to determine whether employment discrimination has occurred were made

the Americans with Disabilities Act ("ADA"), 29 U.S.C. § 12101 *et seq.*, analyses of claims made under the two acts run roughly parallel. *See McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459-60 (6th Cir. 1997). "By statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination." *Id.* at 460 (citing 29 U.S.C. § 794(d)). Recent Supreme Court decisions sharply limiting the reach of the ADA thus also apply to cases brought under the Rehabilitation Act. *See, e.g., Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 122 S.Ct. 681, 690-92, 534 U.S. 184, ___ (2002); *Sutton v. United Air Lines Inc.*, 527 U.S. 471, 481-89 (1999).

To make out a *prima facie* employment discrimination case under either Act, a plaintiff must show (1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability. *See Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) (ADA); *Doherty v. Southern College of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988), *cert. denied* 493 U.S. 810 (1989) (Rehabilitation Act). An individual is discriminated against when she or he is fired solely because of a disability, *see Maddox v. University of Tennessee*, 62 F.3d 843, 846 (6th Cir. 1995), but discrimination also includes "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of [their] disability." 42 U.S.C. § 12112(b)(1); 29 U.S.C. § 791(g).

A threshold question is whether a claimant is disabled within the meaning of the acts. To be "disabled" for the ADA and the Rehabilitation Act, an individual must (1) have a physical or mental impairment which "substantially limits" him or her in at least one "major life activity," (2) have a

applicable in Rehabilitation Act cases. *See* 29 U.S.C. § 791(g).

the term "substantially limits" should be read "strictly to create a demanding standard for qualifying as disabled." 122 S.Ct. at 691. We would be using a less-than-demanding standard were we to find Mahon substantially limited in working when he is still qualified for over half the jobs he was qualified for before his injury. There is also reason to discount Dr. Crumpton's study. Her analysis began with the assumption that Mahon is now unable to work as a steamfitter. J.A. at 467. After his injury in 1988, however, Mahon worked as a steamfitter for TVA, albeit with restrictions. In 1998, he asserted that he was still qualified to work as a steamfitter (with restrictions), and protested when TVA did not reemploy him in that position. J.A. at 782-83, 827-28. Each of these factors militate against Mahon's assertion he was substantially limited in working; together they justify the district court's conclusion that he was not substantially limited in the activity of working.

### 2. Regarded as disabled

Mahon also asserts that he can make out his *prima facie* case because TVA regarded him as disabled. Under the ADA and the Rehabilitation Act, an individual who is "regarded as" disabled counts as disabled for purposes of the acts. *See* § 12102(2)(C). This part of the Act is intended to allow individuals to be judged according to their actual capacities, rather than through a scrim of "myths, fears, and stereotypes" accruing around a perceived impairment. *Sutton*, 527 U.S. at 489-90 (citation omitted).

To determine whether an individual is "regarded as disabled," we apply the test laid out in *Sutton*:

There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton*, 527 U.S. at 492.

To determine if the claimant is precluded from a substantial class or broad range of jobs, we compare his access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the claimant's geographic vicinity. *See id*. 491-92; *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 253-54 (6th Cir. 2000).

Mahon asserts that his back injury precludes him from a substantial class of jobs, but it is not clear what class he believes himself excluded from. At one point he refers to the "steamfitter" class of jobs, Appellant's Br. at 34, but elsewhere claims his injury prevents him from performing all manual building trade jobs, *id*. at 32. Apart from his own assertions, Mahon's main evidence that he is precluded from a broad range of jobs is an affidavit from a vocational counselor and disability analyst, Nancy Crumpton, Ed.D. Based on Mahon's work restrictions, his assertion he cannot perform the work required of a steamfitter, and a study of the Chattanooga labor market, Dr. Crumpton concluded that he is not qualified to work as a steamfitter or to perform work "requiring use of similar skills, tools, processes, or materials." J.A. at 168. Overall, she found Mahon had "suffered a 47 % loss of access to his job market." *Id*.

Our Court has in the past allowed claimants to assert they were substantially limited in the major life activity of working when they showed their impairments barred them from a significant percentage of available jobs. In *Burns v. Coca-Cola Enterprises, Inc.*, we affirmed a district court's decision that a plaintiff was disabled under the ADA "because his injury precluded him from performing at least 50% of the jobs he was qualified to perform given his education, background and experience." 222 F.3d at 253. But this was before the Supreme Court's decision in *Williams*, which emphasized that

record of such an impairment, or (3) be regarded as having such an impairment. *See* 29 U.S.C. § 705(20)(B) (Rehabilitation Act definition); 42 U.S.C. § 12102(2) (ADA definition).

There is no blanket rule for determining when a claimant is disabled. "Congress intended the existence of a disability to be determined in . . . a case-by-case manner." *Williams*, 122 S.Ct. at 692.

Here Mahon asserts alternately that he is actually disabled, having a physical impairment which substantially limits him in a major life activity, or that TVA regarded him as having such a disability. We address these claims in turn.

### B. Is Mahon disabled under the acts?

#### 1. Actually disabled

Mahon first attempts to show that he has a "physical or mental impairment that substantially limits one or more of the major life activities." 29 U.S.C. § 705(20)(A). Both sides accept Mahon's back injury as an impairment, so the question is whether it substantially limits a major life activity.

"Substantially limits" and "major life activities" are terms of art under the acts. *See, e.g.*, *Williams*, 122 S.Ct. at 690-91; *Sutton*, 527 U.S. at 481-90. "Substantially limits" is difficult to define, but in the Supreme Court's words, "'[s]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or to a large degree'." *Williams*, 122 S.Ct. at 691 (citation omitted). Major life activities are "activities that are of central importance to daily life." *Id*. There is no exhaustive list of major life activities, but the Supreme Court cited with approval the regulations promulgated under the Rehabilitation Act defining major life activities to include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R § 84.3(j)(2)(ii); *see also Williams*, 122 S.Ct. at 689. The Supreme Court emphasized that "these terms need to be

interpreted strictly to create a demanding standard for qualifying as disabled." *Williams*, 122 S.Ct. at 691.

In his complaint in the district court, Mahon asserted that he was limited in the major life activities of "sitting, standing, bending, stooping, walking, climbing, lifting, and/or working." J.A. at 11. On appeal, though Mahon does not withdraw any of these claims, he chiefly argues that he is limited in the major life activity of working.

As a major life activity, however, "working" is problematic. In *Sutton*, the Supreme Court stated that "there may be some conceptual difficulty in defining 'major life activities' to include work," 527 U.S. at 492, and in *Williams* it stated that the Equal Employment Opportunity Commission may have acted beyond its mandate when it issued regulations that listed "working" as a major life activity for purposes of the ADA. *See* 122 S.Ct. at 689. TVA has not, however, challenged the validity of the regulations listing "working" as a major life activity, and we therefore assume without deciding that those regulations are valid. Moreover, our Court appears to have held, after *Sutton*, that working is a major life activity under the acts. *See Henderson v. Ardco, Inc.*, 247 F.3d 645, 652 (6th Cir. 2001) (holding that plaintiff had shown evidence sufficient to withstand summary judgment that her employer regarded her as disabled in working); *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001) ("the drafters of the ADA and its subsequent interpretive regulations clearly intended that plaintiffs who are mistakenly regarded as unable to work have a cause of action under the [ADA]"). Because of the problems surrounding "working," however, we shall treat it as suggested by the EEOC, as a residual category resorted to only when a complainant cannot show she or he is substantially impaired in any other, more concrete major life activity. *See Sutton*, 527 U.S. at 492 (citing 29 C.F.R. pt. 1630, Apx. § 1630.2 (j)); *Henderson*, 247 F.3d at 650. We therefore ask first whether Mahon is substantially limited in life activities other than working.

*a. Major life activities other than working*--Although in *Williams* the Supreme Court directly addressed only the question of when a claimant is substantially limited in the major life activity of performing manual tasks, its decision makes clear that any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the Act. *See* 122 S.Ct. at 691.

Mahon has not shown that his physical impairments considerably or profoundly limit his ability to sit, stand, bend, stoop, walk, climb, or lift. The record does show that his back impairment causes him distress and limits him in performing some activities, but based on the evidence presented we cannot say he is severely restricted in any of them. In a deposition, Mahon admitted that despite his injury he can still perform household tasks, clean gutters, fix plumbing, walk a mile, and work on his car, J.A. at 561-62, 567-68, and evidence drawn from his personal daily planner also shows that he frequently performed moderately strenuous physical activities while he worked in the reemployment initiative. J.A. at 836-76. Congress did not in the ADA intend to allow "everyone with a physical impairment that precluded the performance of some isolated, unimportant, or particularly difficult manual task to qualify as disabled," *Williams*, 122 S.Ct. at 691, and we therefore agree with the district court that Mahon's impediments were not sufficiently severe as to render him disabled within the meaning of the acts..

*b. The major life activity of working*--In determining whether an individual is substantially limited in the major life activity of working, we are guided by *Sutton*:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.