NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0194n.06
Filed: April 11, 2008

No. 07-3347

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARGARET M. BRADY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOHN E. POTTER, Postmaster General; | ) | NORTHERN DISTRICT OF OHIO |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

**Before: COLE, GIBBONS, and ROGERS, Circuit Judges.**

**Rogers, Circuit Judge.** Plaintiff Margaret M. Brady appeals the district court's grant of

summary judgment in favor of defendants Postmaster General and United States Postal Service.

After voluntarily resigning her position with the Postal Service, Brady, who suffers from diabetes,

sued the defendants on the grounds that: (1) they had discriminated against her in violation of the

Rehabilitation Act, and (2) they had violated her rights under the Family Medical Leave Act. The

district court held that Brady could not recover under the Rehabilitation Act because she was neither

disabled nor regarded as disabled by her employer. On the FMLA claims, the district court granted

summary judgment for the defendants on the basis that they had neither interfered with Brady's

exercise of her FMLA rights nor retaliated against her for exercising those rights. Brady disputes

those holdings, but because her arguments lack merit, we affirm.

I.

Brady, who was first diagnosed with Type I diabetes in 1983, was hired by the Postal Service as a clerk on December 5, 1998. She resigned on October 15, 2004. Throughout her employment with the Postal Service, Brady regulated her insulin either through shots or through an insulin pump, which she wore on her side. She also took simpler precautions to manage her condition, such as maintaining a balanced diet, maintaining an appropriate level of physical fitness, and keeping sodas in the refrigerator at work to help regulate her blood sugar. Those measures allowed Brady to live a relatively normal life free of any major limitations. In fact, when she was initially hired, her doctor placed two minimal restrictions on her employment — that she not operate dangerous machinery or climb ladders — and almost five years later, her doctor certified that she was not subject to any physical restrictions.

During 1998, 1999, and 2000, Brady had an excellent attendance record. She was never absent in 1998 or 1999, and she only missed work once or twice in 2000. Brady apparently had her first diabetes-related episode at work on January 9, 2001, when she became disoriented and fell onto a cart. She then went to the bathroom, where she fell down again and hit her head, which prompted her co-workers to call an ambulance to take her to the hospital. Brady missed work for the rest of that day and the next day as a result of this incident.

Approximately two months later, on March 22, 2001, Brady started feeling ill at work. She claims that the post office was very warm on that particular day because the exterior dock doors had

been closed, and she further claims that the high temperature made her feel ill. Brady further alleges that she went to the bathroom to check her blood sugar level, which she discovered to be low. After checking her blood, Brady decided to go home for the day. She says that decision caused a confrontation with Jack Thomas, her supervisor that day. Thomas tells a slightly different story. He says that the temperature outside was 33 degrees and that although he had closed the exterior dock doors because other employees were cold, he compromised by leaving the windows open. Upon his closing the doors, according to Thomas, Brady ran to the bathroom claiming that she was hot. Thomas says that Brady became angry about the doors being closed and yelled at him and said that she was going home. Both parties are in agreement that Brady left work after completing the necessary request-for-absence paperwork. Five days after that absence, Brady was given a letter of warning for "conduct unbecoming" as a result of the unprofessional conduct that she displayed during her confrontation with Thomas. The letter of warning, however, was eventually dropped through the Postal Service's grievance system.

On May 5, 2001, Brady missed work because of symptoms related to her diabetes. She was initially denied FMLA leave on the ground that she had not provided proper medical documentation, but the absence was later approved as FMLA leave. Representatives from the Postal Service and her union subsequently met with her to explain the information that she was required to provide in order to be approved for FMLA leave. Brady's hostile attitude at that meeting led to imposition of a seven-day suspension, but that punishment was also dropped through the grievance process.

On June 13, 2002, Brady was late to work because of an episode of hypoglycemia. She was granted FMLA leave for the portion of the day that she missed because the medical certification form that she submitted indicated that she had been incapacitated on June 13. The form, however, was deemed an insufficient basis for approving future FMLA leave because it indicated that Brady would not need to work intermittently or on a less than full schedule, and because it failed to provide an estimate of the likely duration and frequency of future episodes of incapacity. Therefore, when Brady missed work on dates after June 13, 2002, she was asked to submit additional documentation showing that she had been incapacitated on those dates as well. Despite being informed that the June 13 form was only sufficient for that date, Brady persisted in her belief that the June 13 form was sufficient to cover future intermittent absences as well. Thus, she repeatedly submitted copies of her June 13 form whenever she missed work after June 13, and each time she re-submitted the June 13 form her request for FMLA leave was denied. The record indicates that all of Brady's requests for FMLA leave up to and including June 13, 2002, were approved, while all requests after June 13 were denied.

On December 19, 2002, Brady had a confrontation with supervisor Larry Nekic. She called in sick the next day and then did not return to work for the next two months. She requested FMLA leave, and Postal Service records — which Brady has not contradicted — show that she never submitted any FMLA documentation relating to her absence. Because Brady was continuously absent without leave for approximately two months, the Postal Service decided in February of 2003

that she would be terminated effective March 29, 2003.  Through the grievance process, however, Brady's removal was reduced to a long-term suspension without back pay.

Starting in April of 2004, Brady took 12 weeks of FMLA leave in order to give birth to her son.  She returned to work in July of 2004.  On October 5, 2004, Brady was informed that she had used her entire 12-week allotment of FMLA leave for 2004.  Less than two weeks later, on October 15, 2004, Brady resigned her position through a letter to her supervisor, Stan Long.  In her letter, Brady cited her health and family as the reasons for her departure, and she praised her supervisor for his "strong and fair leadership."  Nearly three months later, Brady filed this lawsuit.  Her complaint presented allegations that the Postal Service discriminated against her in violation of the Rehabilitation Act, interfered with her rights under the Family Medical Leave Act, and retaliated against her for exercising her rights under the Family Medical Leave Act.[1]  The district court granted summary judgment in favor of the defendants on all of Brady's claims.

Brady filed four EEOC complaints during her employment with the Postal Service.  The first was filed on June 15, 2001, concerning the letter of warning that she received in March of 2001 for conduct unbecoming.  The second complaint was filed on December 23, 2002, concerning the Postal Service's refusal to accept the FMLA documentation that Brady had repeatedly submitted in the second half of 2002 despite being informed that it was insufficient.  An administrative judge issued a decision against Brady on both of those claims on August 18, 2004.  Brady's third EEOC claim

---

[1]Brady's complaint did not actually mention the interference allegation by name.  Instead, it alleged retaliation while citing the portion of the statute applicable to interference claims.  The district court interpreted the complaint as asserting both a retaliation and an interference claim.

was made on February 24, 2003, and it pertained to non-sexual harassment.  Her fourth claim, which was made on April 28, 2003, stemmed from her proposed termination that was ultimately reduced to a long-term suspension without pay.  The third case was closed on January 12, 2005, while the fourth case was closed a year earlier, on February 6, 2004.  Only the first two EEOC complaints were made the subject of this lawsuit.

II.

The defendants are entitled to summary judgment on Brady's Rehabilitation Act claim because Brady is not disabled, nor was she regarded her as being disabled by her employer.  In a disability discrimination case brought under the Rehabilitation Act, the plaintiff must establish a prima facie case by proving that: (1) the plaintiff is disabled, (2) she is otherwise qualified for the job, with or without reasonable accommodation, (3) she suffered an adverse employment action, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) either the plaintiff was treated less favorably than similarly situated non-disabled employees, or, after the adverse employment action, the plaintiff was replaced by a non-disabled person or the plaintiff's position remained open.  *See Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007).  To satisfy the first element, Brady need not prove that she is actually disabled if she can show that the Postal Service regarded her as being disabled.  *See Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir. 2002) (citing 42 U.S.C. § 12102(2)(C)).  Because Brady cannot satisfy the first element, summary judgment in favor of the defendants was appropriate since there is no way that a reasonable jury could rule in her favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Brady's diabetes is not a disability because it is not a "physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(B). Major life activities are those "that are of central importance to daily life," *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002), such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Mahon*, 295 F.3d at 590 (quoting 45 C.F.R. § 84.3(j)(2)(ii)). A substantial limitation of such an activity exists when the individual's ability to perform that activity is limited to a large degree. *See Toyota Motor Mfg.*, 534 U.S. at 196-97. It is not enough for the impairment to cause merely moderate or intermittent interruptions in the performance of the activity. *See Mahon* at 590-91 (citing *Toyota Motor Mfg.*, 534 U.S. at 196-97).

Although Brady's diabetes is an impairment, it did not substantially limit any major life activities. All of the evidence indicates that Brady leads a relatively normal life that is free of any major limitations. Her condition has, at most, a moderate impact on her major life activities. In fact, her impairment imposed such slight limitations on her life during her employment with the Postal Service that she was able to go for over a year without missing a single day of work. Additionally, when she was originally hired by the Postal Service, her doctor placed minimal restrictions on her work, and her physician later certified that she was able to work with no restrictions. Her claims that she is disabled are also belied by her EEOC testimony, in which she said that her condition was easily managed with the use of her insulin pump and with simple precautions like maintaining an appropriate diet, getting sufficient exercise, and keeping sodas in the refrigerator at work to help regulate her blood sugar. Brady's condition must be analyzed in light of these therapeutic measures.

The Supreme Court held in *Sutton v. United Air Lines Inc.*, 527 U.S. 471, 482 (1999), that the curative effects of such measures must be considered in determining whether an individual is disabled.

Despite ample evidence that she is not disabled, Brady asserts that she is substantially limited in the major life activities of working and eating.[2] While she missed a few days of work because of her diabetes, there is no indication that her diabetes-related absences constituted a substantial limitation on her ability to work. She had almost no medical restrictions on the type of work that she could perform, and there is no evidence that she has ever been determined to be unable to perform any jobs. Therefore, it cannot be said that she is limited in the activity of working. Finally, the evidence also indicates that Brady is not substantially limited in the major life activity of eating. Brady herself testified that there are no specific restrictions on what she can eat. Instead, she is merely required to monitor the quantity of what she eats. If the need to watch what one eats constitutes a disability, then almost everyone is disabled.

Because Brady was not disabled, she can only satisfy the first element of her prima facie case if she can show that she was regarded as disabled by the Postal Service. She cannot meet that burden because there is no evidence showing: (1) that the Postal Service mistakenly believed that she had a physical or mental impairment that substantially limits one or more major life activities, or (2) that

---

[2]It is unclear whether "working" is a major life activity. In *Sutton*, the Supreme Court noted that there are conceptual problems with considering "working" to be a major life activity, 527 U.S. at 491, and in *Toyota Motor Mfg.*, the Supreme Court questioned the validity of the regulation that identifies "working" as a major life activity. *See Toyota Motor Mfg.*, 534 U.S. at 194. For the sake of argument, we assume, without deciding, that working is a major life activity.

the Postal Service correctly believed that she had an impairment but mistakenly believed that the impairment substantially limited one or more major life activities. *See Mahon*, 295 F.3d at 592 (citing *Sutton*, 527 U.S. at 489). Here, there is no evidence indicating that the Postal Service regarded her as having substantial limitations on any major life activities. It is true that the Postal Service was aware of Brady's diabetes, but awareness of an impairment is not enough to prove that the impairment was regarded as substantially limiting major life activities. It is also true that the Postal Service made Brady submit to a medical review before returning to work on at least one occasion, but that is not evidence that she was regarded as disabled. To the contrary, it is evidence that the Postal Service was uncertain as to her condition. By allowing her to return to work following her examination, the Postal Service actually appears to have accepted the certification of her health and thereby regarded her as not disabled. Further, there is no evidence that the Postal Service ever considered her to be unfit for any positions, nor is there evidence that the Postal Service placed any restrictions on her employment. Accordingly, Brady's Rehabilitation Act claim must fail as a matter of law.

The defendants also ask this court to affirm on the ground that Brady did not suffer an adverse employment action. Because Brady was not disabled, we need not reach that issue.

III.

The defendants are also entitled to summary judgment on Brady's FMLA claims. First, Brady has waived her FMLA retaliation claim by not addressing it in her opening brief. *See Marks*

*v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (en banc); *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 153-54 (6th Cir. 1996)). Second, the defendants are entitled to summary judgment on Brady's FMLA interference claim because the Postal Service did not interfere with Brady's FMLA rights during the period encompassed by the statute of limitations — i.e., the twenty-four months preceding Brady's lawsuit. *See* 29 U.S.C. § 2617(c)(1). During that time period, there was no interference with Brady's FMLA rights because she was not denied FMLA benefits to which she was entitled. *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577-78 (6th Cir. 2007) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)). Because proof of such a denial is essential to Brady's prima facie case, her failure to present such proof means that the defendants are entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The only denial of FMLA benefits during the statutory period occurred when Brady sought FMLA leave for her two-month absence in early 2003 that ultimately resulted in a long-term suspension. Contrary to being an interference with Brady's rights, the denial of benefits in that instance was entirely appropriate because Brady had refused to provide any medical documentation to support her request. Brady, however, claims that it was an interference with her FMLA rights for the Postal Service to deny her request because she had previously provided the Postal Service with documentation that was sufficient to cover her two-month absence in 2003. Brady's argument is wrong because her previously submitted documentation did not provide a sufficient basis for approving her two-month absence as FMLA leave since it stated that she would not need to be absent

from work intermittently. As a result, the Postal Service correctly requested new documentation

showing that Brady's absence was due to incapacitation by her diabetes. By refusing to provide such

documentation, Brady essentially forfeited her ability to receive FMLA benefits.

It is true that the two-year statute of limitations on FMLA claims is extended to three years

if the case involves a willful violation of the FMLA. *See* 29 U.S.C. § 2617(c)(2). In this case, the

two-year limitations period is appropriate because there was no violation — much less a willful

violation — during the twelve-month period preceding January 3, 2003, the cut-off date for the two-

year statute of limitations. The only possible violations during that additional year were the multiple

rejections of Brady's FMLA documentation after June 13, 2002. Even if those rejections were

FMLA violations, however, they could not be considered willful violations because the FMLA

Coordinator for the Northern Ohio District of the United States Postal Service said that he relied on

the advice of Postal attorneys in rejecting Brady's documentation. Reliance on an attorney's opinion

negates a finding of willfulness. *See Willis v. Hartzell Propeller Inc.*, 497 F. Supp. 2d 913, 919 (S.D.

Ohio 2007) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 130 (1985)).

IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.