## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellant,

v.

## DAIMLER CHRYSLER CORPORATION, Defendant–Appellee.

No. 02–2361.

United States Court of Appeals, Sixth Circuit.

Sept. 15, 2004.

Before MARTIN and ROGERS, Circuit Judges, and BELL, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge, dissenting.

ROGERS, Circuit Judge.

Thomas Diem applied for a position as a mechanic with DaimlerChrysler Corporation ("DCC"), and DCC offered Diem a job contingent upon his passing a physical examination. Due to a miscommunication between Diem and the DCC physician who examined him, the DCC physician mistakenly concluded that Diem suffered from a hip injury that limited his ability to bend. As a result, DCC withdrew the job offer. Diem then filed a complaint with the Equal Employment Opportunity Commission, which sued DCC under the Americans with Disabilities Act, or ADA, 42 U.S.C. § 12101 *et seq.* The district court granted summary judgment in favor of DCC, ruling that the EEOC had not created a genuine issue of material fact as to whether DCC withdrew its job offer because it "regarded" Diem as disabled or because of Diem's "record" of disability. Because the EEOC has not created a jury question as to whether DCC "regarded" Diem as "substantially limited" in the major life activities of moving or working, or as to whether DCC based its rescission of the job offer on Diem's "record" of disability, we affirm the judgment of the district court.

## BACKGROUND

Thomas Diem is a mechanic. From 1972 until 1996, Diem worked as a mobile

---

* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

equipment mechanic for McLouth Steel in Trenton, Michigan, repairing generators, bulldozers, gasoline tankers, trucks, and jitneys (also known as hi-lows).[1] At this job, Diem routinely climbed large vehicles such as gasoline tankers and bulldozers, and his position also required bending, stooping, squatting, and twisting of his body. According to his supervisor, Diem was a good worker who performed every job assigned to him.

In 1976, at age 29, Diem began experiencing pain in his left hip. The pain grew progressively worse. By 1981, Diem was in constant pain, and he could not sit for longer than 15 or 20 minutes, could stand for only two or three hours, and could walk for only 100 yards. Because of this condition, Diem took a medical leave of absence from McLouth Steel in March 1982.

Diem was diagnosed with severe aseptic necrosis—a non-infectious breakdown and degeneration of the bone. In April 1982, Diem had hip replacement surgery. He returned to his job at McLouth Steel in July 1983, following a long recovery. Though he experienced mild pain in his left hip area, Diem was able to perform all of his job duties without accommodation.

In March 1996, McLouth Steel closed. Diem joined Friendly Ford as an auto mechanic, and he performed his job without any restrictions, even though the job required bending, stooping, and twisting. In February 1996, prior to McLouth Steel's closure, Diem had applied for employment with DCC. In July 1996, he interviewed with Stephen Venglarcik, Maintenance Area Manager at DDC's Detroit Axle Plant, and another supervisor for a position as a jitney repair mechanic. Diem was offered the job contingent upon his passing a physical examination.

Prior to the examination, Diem completed a "Self–Administered Medical History" form. On the form, Diem disclosed, among other things, that he had undergone hip replacement surgery and that, either presently or in the past, he suffered "hip, knee, ankle, or foot trouble or injury," "hip, knee, ankle, or foot operation," and "[p]ainful or swollen joints." Additionally, a DCC employee prepared a "Preplacement Examination Insert" form, which stated that Diem had "left hip replacement due to arthritis in 1982" and walked "with limp due to hip replacement."

Dr. Ajit Ray, then Plant Physician for the Detroit Axle Plant, examined Diem. According to Diem, Ray performed "a normal physical." However, Diem had difficulty understanding Ray because of Ray's heavy accent, and he did not comply with what he later learned were Ray's requests that he perform "physical tests," including bending, stooping, and squatting. According to Diem, had he understood Ray's instructions, he could have successfully completed the tests. Diem did understand Ray's inquiry about a scar on his hip, and he informed Ray that the mark was from hip replacement surgery. Diem claims that he told Ray that he "did not understand what [Ray] was saying" two or three times. At his deposition, Ray testified that he could not remember the examination.

To Diem's surprise, approximately 15 minutes after he left Ray's office, a receptionist informed him that he had "failed" the examination. Ray completed an assessment form designating Diem as "Physically Qualified with [ ] specific restriction[s]." Specifically, Ray marked the following "Physical Qualification Codes" on the form: (1) "PQX 40"—"No Climbing. Permits ground level or platform work

---

**1.** According to Diem, a hi-low, or jitney, "[m]oves pallets. They had electric hi-lows, gas hi-lows, diesel hi-lows, [and] propane hi-lows."

and ordinary stair climbing"; and (2) "PQX 60"—"Minimal stooping, squatting, bending, or twisting of body." Additionally, Ray wrote on the form, "No Squatting," "No Climbing," and "No Flexing of [Left] Hip [Greater Than] 90 ."

Ray forwarded his assessment to Christine Soukup, employment supervisor at the Detroit Axle Plant, and the pair discussed Ray's conclusions. According to Soukup, Ray advised that, because of "something with the hip," Diem could not "bend over into the jitney" without a risk of "significant harm." Soukup then had several conversations with "operating management," that is, Diem's potential supervisors.[2] Soukup explained the physical restrictions identified by Ray to the supervisors, and inquired whether they had a position available for Diem given his limitations. Soukup and the supervisors determined that Diem could not function as a jitney repair mechanic, a position requiring regular bending, but could perform "bench work." Because a suitable position was not open at the Detroit Axle Plant, DCC rescinded its offer of employment.

The next month, Diem filed a charge with the EEOC. Approximately a year later, in the summer of 1997, DCC offered Diem a job at a different facility, which Diem declined based on the location and because he had scheduled a second hip replacement surgery for later that year. Finally, in January 1998, DCC hired Diem as a jitney repair mechanic at a third facility.

The EEOC filed suit against DCC in the United States District Court for the Eastern District of Michigan, charging that DCC "had failed to hire Diem as a Jitney Repairman at its Detroit Axle Plant on the basis of his disability (mobility impairment)" in violation of the ADA. The EEOC conceded that Diem was not actually disabled, but contended that DCC refused to hire Diem because it "regarded" him as disabled and because of Diem's "record of" disability.

The district court granted DCC's motion for summary judgment. The court rejected the EEOC's argument that DCC "regarded" Diem as having a "mobility" disability, reasoning that DCC simply believed that Diem lacked the mobility to perform a particular job rather than believing that Diem's mobility was severely restricted in comparison to an average person in the general population. Further, the court dismissed the EEOC's contention that DCC "regarded" Diem as having a "working" disability. It explained that, although DCC believed that Diem's condition substantially limited his ability to work, this belief did not give rise to liability because it was based on Diem's failure to perform the tests—itself the product of "miscommunication"—and not on "biases, ignorance, or unfounded fears" about Diem's impairments. Finally, the court determined that the evidence did not permit a finding that DCC was aware of Diem's "record of a disability."

The district court later denied the EEOC's motion for reconsideration. The court rejected the EEOC's argument that an employer "regards" an employee as "disabled" regardless of whether its misperception of the individual's abilities

---

2. Soukup could not recall the identities of the supervisors with whom she discussed Diem. Venglarcik, one of the managers who interviewed Diem, stated that he never discussed Diem's medical condition with Ray or with anyone from DCC's human resources department. However, he "was later told that Mr. Diem told the doctor he had a hip replacement, and that Mr. Diem had job restrictions that prevented him from performing the normal duties of a jitney repair mechanic. As [Venglarcik recalled] there was concern that his hip might 'pop-out.' "

stems from bias or from a miscommunication. The court reiterated its ruling that "[b]ecause Dr. Ray's assessment of Diem followed an individualized examination and there is no evidence that Dr. Ray's determination was infected with stereotypes or prejudice, [DCC's] assessment of Diem should be excepted from liability under the ADA." Additionally, the court identified another bar to a finding that DCC "regarded" Diem as "disabled," concluding that, contrary to its earlier ruling, the EEOC had not created a genuine issue of material fact as to whether DCC believed that Diem was "substantially limited" in the major life activity of "working." The court found that the evidence merely indicated that DCC deemed Diem incapable of performing a particular job rather than a range of jobs. The EEOC timely appealed.

## ANALYSIS

### 1. Standard of Review

This court reviews de novo a district court's grant of summary judgment. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir.1999). Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue of material fact exists when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

### 2. The ADA

The ADA provides

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (2001). To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that he is "disabled" within the meaning of the ADA, (2) that he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of the disability. *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir.2001).

An individual is "disabled" within the meaning of the ADA if he (a) has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," (b) has "a record of such impairment," or (c) is "regarded as having such an impairment." 42 U.S.C. § 12102(2). An individual is "regarded as" having a disability if "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

### 3. "Regarded As" Disabled

The district court properly concluded that the EEOC has not created a genuine issue of material fact as to whether DCC "regarded" Diem as "substantially limited"

in the "major life activities" of "moving" and "working."

### a. The Major Life Activity of "Moving"

■ The EEOC had not created a genuine issue of material fact as to whether DCC believed that Diem's hip injury "substantially limited" him in the major life activity of "moving." In granting DCC summary judgment, the district court recognized "moving"—in particular, bending, twisting, stooping, and squatting—as a "major life activity." However, the court determined that the EEOC had not created a genuine issue of material fact as to whether DCC believed that Diem's hip condition "substantially limited" his "movement." The court determined that Dr. Ray's examination measured Diem's ability to "perform a job that required more than minimal bending, stooping, squatting, or twisting of the body or climbing" rather than his "ability to perform these major life activities in general." J.A. at 20.

EEOC regulations define "substantially limits" as (1) "Unable to perform a major life activity that the average person in the general population can perform," or (2) "Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major activity."[3] 29 C.F.R. § 1630.2(j)(1) (2003). The regulations identify the following factors as relevant in determining whether an individual

meets this definition: (i) "The nature and severity of the impairment"; (ii) "The duration or expected duration of the impairment"; and (iii) "The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. 1630.2(j)(2).

The Supreme Court has stressed that the term "substantial limits" creates a "demanding standard." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). To rise to the level of a "substantial limitation," an impairment must "prevent[ ] or severely restrict[ ] an individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198, 122 S.Ct. 681. An ADA claimant cannot rely solely on a medical diagnosis, but instead must offer "evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Id.* at 198, 122 S.Ct. 681 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)) (internal punctuation omitted). Additionally, the inquiry must focus on the effect of the impairment on the individual's daily life, not on its effect on the individual's ability to perform a specific job. *Id.* at 200–01, 122 S.Ct. 681. The Supreme Court squarely rejected the idea that "the question of whether an impairment constitutes a disability is to be answered only by analyzing the effect of the impairment in the workplace." *Id.* at 201, 122 S.Ct. 681.

As the district court concluded, the EEOC cannot establish "substantiality" with respect to Diem's ability to "move"[4]

---

**3.** The ADA does not define the term "substantially limits." However, because DCC does not challenge the validity of the EEOC regulations, we apply them in the present case. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 194, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) ("Because both parties accept the

EEOC regulations as reasonable, we assume without deciding that they are, and we have no occasion to decide what level of deference, if any, they are due.").

**4.** We assume without deciding that "moving," as defined by the EEOC in this case, constitutes a major life activity. *See Hoskins v.*

because its evidence relates solely to Diem's ability to move in the workplace. The EEOC relies primarily on the "PQX 40" and "PQX 60" codes that Dr. Ray assigned to Diem. As defined in DCC documents, "PQX" means "Physically Qualified with the specific restriction number listed," and the numbers "40" and "60" mean "No climbing. Permits ground level or platform work and ordinary stair climbing," and "Minimal stooping, squatting, bending, or twisting of the body," respectively. J.A. at 99. On their face, then, the codes simply identify limitations applicable at the workplace and do not speak to an individual's ability to function in daily life.

The other evidence relied on by the EEOC also does not show that DCC viewed Diem as substantially restricted in his ability to "move" in daily life. Ray wrote "No Flexing of [Left] Hip [Greater than] 90 " on the form he completed following Diem's examination. J.A. at 55. Soukup testified that Ray informed her that Diem risked "significant harm" if he "bent over into the jitney." J.A. at 69. Steven Venglarcik, who interviewed Diem for the position of jitney repair mechanic, stated that he was told "that Mr. Diem had job restrictions that prevented him from performing the normal duties of a jitney repair mechanic. As I recall there was concern that his hip might 'popout.' " J.A. at 40. This evidence establishes that DCC doubted whether Diem's hip could withstand the rigors of the job of jitney repair mechanic, but sheds little light on the impact that DCC believed that Diem's condition would have on his everyday activities.

The EEOC argues that Ray's assessment "was not tied to any job" and that

*Oakland County Sheriff's Dep't*, 227 F.3d 719, 724 (6th Cir.2000) (identifying "moving" as one of several major life activities in a list that included breathing and performing manual tasks such as doing laundary).

"the evidence strongly suggests that Dr. Ray believed that Diem's perceived limitations would affect him outside the workplace as well as on the job." EEOC Br. at 17–18. We agree that Ray did not evaluate Diem for a particular position at the Detroit Axle Plant and that a reasonable jury could find that DCC believed that Diem's limitations "affected" him outside the workplace, but this does not create a jury issue as to the "substantiality" of the perceived limitation. To prevail, the EEOC must show that DCC perceived Diem's impairment as "considerably and profoundly" limiting his ability to "move" as compared to the average person in the general population. *Mahon v. Crowell*, 295 F.3d 585, 591 (6th Cir.2002). The evidence adduced by the EEOC arguably shows that DCC believed that Diem's hip condition significantly restricted his ability to function as a jitney repair mechanic at the Detroit Axle Plant, but leaves the jury to speculate as to the severity of the "affect" of the perceived limitation on Diem's daily life. Without evidence showing that DCC translated these job restrictions into significantly restrictive impediments to daily living, the EEOC's claim cannot survive summary judgment.

### b. The Major Life Activity of "Working"

■ The district court also correctly concluded that the EEOC has not create a genuine issue of material fact as to whether DCC believed that Diem's hip injury was a "substantial limitation" on the major life activity of "working." "Working" qualifies as a "major life activity."[5] *Mahon,*

5. The Supreme Court has questioned whether "working" qualifies as a major life activity. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 200, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) ("Because of the conceptual difficulties inherent in the argument

295 F.3d at 590. "However, the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir.1999). With respect to "working," "[t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (emphasis in original). The EEOC regulations identify the following factors as material to the determination of whether an individual is "substantially limited" in the major life activity of working:

> (A) The geographical area to which the individual has reasonable access;
>
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii). The Supreme Court has summarized,

> If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

"Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir.2001). A plaintiff has an "extraordinarily difficult" case because "[n]ot only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs." [6] *Id.* "An employer does not nec-

---

that working could be a major life activity, we have been hesitant to hold as much, and we need not resolve this difficult question today."); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (identifying "some conceptual difficulty in defining 'major life activities' to include work" but assuming without deciding that working is a major life activity). However, in accordance with the EEOC regulations, this court has recognized "working" as a major life activity, *Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir.2002), and DCC has conceded this point.

6. The EEOC contends that an ADA claimant alleging that he was "regarded as" substantially limited in his capacity for "work" need only show that "the limitations the employer subjectively perceived the individual as having would, if true, significantly restrict the individual's ability to do a class or broad range of jobs." EEOC Reply Br. at 14. This position is contrary to the law in this circuit and other circuits, which requires an ADA claimant to demonstrate that the employer thought that the perceived limitation would prevent the claimant from performing a class or broad range of jobs. *See, e.g., Sullivan v. The Neiman Marcus Group, Inc.*, 358 F.3d 110, 118 (1st Cir.2004); *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004); *EEOC v. J.B. Hunt Transp., Inc.*, 321 F.3d 69, 75 (2d Cir.2003); *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir.2001); *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 954–55 (7th Cir.2000). We must apply

essarily regard an employee as disabled simply by finding the employee to be incapable of satisfying the singular demands of a particular job." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 599 (6th Cir. 2002) (internal quotation marks omitted); *see also EEOC v. J.B. Hunt Transp., Inc.*, 321 F.3d 69, 77 (2d Cir.2003) ("[A] finding of perceived disability may not rest merely on a single employer's failure to hire a candidate."); *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 954 (7th Cir.2000) (refusing to "assume a perception of disability based on [the plaintiff's] termination").

The evidence adduced by the EEOC establishes at most that DCC regarded Diem as unable to perform a single job. The EEOC relies primarily on Soukup's testimony that DCC withdrew its offer because Diem could only do "bench work." and that DCC "didn't have that type of work available within our facility." J.A. at 72–73. According to Soukup, she ex-

plained Diem's limitations, as identified by Dr. Ray, to operating management, who in turn advised her that Diem could not fulfill the duties of a jitney repair mechanic because the position required "bending into the jitneys." J.A. at 71–73. Operating management also informed Soukup that Diem "was able to do bench work" but that "the type of work we had available within the Detroit Axle facility was the bending into the jitneys." J.A. at 72. Therefore, Soukup and operating management decided to rescind Diem's offer.

Contrary to the EEOC's position, Soukup's testimony does not permit a reasonable trier of fact to conclude that Soukup and operating management regarded Diem's capacity for "work" as "substantially limited." The EEOC claims that DCC viewed Diem as significantly restricted in his ability to find employment as a mechanic generally,[7] but Soukup's testimony only establishes that Diem was considered

---

this standard even in the presence of criticism by the EEOC and academics that the standard makes it "virtually impossible" for a claimant to sustain a "regarded as" claim of the "working" stripe. *Sullivan*, 358 F.3d at 118 n. 4.

The EEOC argues that the Supreme Court's decision in *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), supports its interpretation. To the contrary, in *Murphy* the Court confirmed that "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Id.* at 523, 119 S.Ct. 2133. In that case, United Parcel Service, Inc. ("UPS) fired the plaintiff from his position as mechanic, which required that he drive commercial motor vehicles, because hypertension prevented him from being certified to drive commercial vehicles from the Department of Transportation. *Id.* at 519, 119 S.Ct. 2133. The Court concluded that, at most, UPS regarded the plaintiff "as unable to perform the job of mechanic only when that job requires driving a commercial motor vehicle." *Id.* at 524, 119 S.Ct. 2133. According to the EEOC, "the Court did not ask whether UPS subjectively believed that plaintiff was

unqualified to be a mechanic only for UPS or for other employers as well," but rather "considered only whether the limitation, as perceived, would preclude him from working as a mechanic." EEOC Reply Br. at 15. But a review of the text of the decision belies the EEOC's assertion. *See, e.g., Murphy*, 527 U.S. at 525, 119 S.Ct. 2133 ("[P]etitioner has failed to show that he is regarded as unable to perform a class of jobs"), 525 ("[T]he undisputed record evidence demonstrates that petitioner is, at most, regarded as unable to perform only a particular job."), 524 ("Petitioner has put forward no evidence that he is regarded as unable to perform any mechanic job that does not call for driving a commercial vehicle and thus does not require DOT certification"). In holding that UPS at most regarded the plaintiff as unable to perform the single job of UPS mechanic, it appears that the Court reasoned that, because of UPS's unique requirement that its mechanics obtain DOT certification, UPS did not view the plaintiff as generally unemployable as a mechanic. *Id.* at 524–25, 119 S.Ct. 2133.

7.  We assume without deciding that the position of mechanic constitutes a "class of jobs." *See Murphy v. United Parcel Serv., Inc.*, 527

unfit for the position of jitney repair mechanic at the Detroit Axle Plant. In fact, Soukup thought enough of Diem's capacities to inquire whether other positions were available at the facility, and DCC later offered Diem positions at two other facilities. Both of these facts support the conclusion that DCC did not regard Diem as "substantially limited" in working. In *Cotter*, 287 F.3d at 600–01, for instance, we stated that the fact that the defendant attempted to find another position for the plaintiff militated against a finding that the defendant regarded the plaintiff as substantially limited in working. And in *Swanson v. University of Cincinnati*, 268 F.3d 307, 318 (6th Cir.2001), we relied on the fact that the defendant encouraged the plaintiff to pursue another speciality after the plaintiff was expelled from a surgical residency program, in concluding that the defendant did not perceive the plaintiff's impairment as significantly restrictive of his work as a physician.[8]

The EEOC also points to the testimony of John Kelley, the former Human Resources Manager at the Detroit Axle Plant, and the affidavit of Sherry Browning, a vocational rehabilitation counselor apparently employed as an expert by the EEOC. Kelley described the PQX 40 and PQX 60 codes as "restrictive" (J.A. at 107–08), but, as the district court observed, it does not appear that Kelley had any involvement in DCC's hiring decision with respect to Diem. Browning stated that, in her opinion, based on the restrictions imposed on Diem by Dr. Ray, Diem "would have lost access to 40.6% of the skilled and semi-skilled job titles for which he has directly, closely, or generally transferable skills. He would have also lost access to 21.6% of unskilled occupations." J.A. at 110–11. However, the EEOC has not demonstrated that Soukup or operating management possessed this level of knowledge.[9] The testimony of individuals uninvolved in DCC's decision to rescind Diem's

U.S. 516, 524–25, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (arguably assuming that "mechanic" constitutes a class of jobs); *cf. Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 493, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (arguably assuming that "airline pilot" constitutes a class of jobs); *Black v. Roadway Express, Inc.*, 297 F.3d 445, 453 n. 12 (6th Cir.2002) (identifying "truck driving" as a class of jobs).

The EEOC also claims that DCC perceived Diem "as unable to do any job requiring more than minimal bending, stooping, twisting and squatting." EEOC Reply Br. at 12. However, the EEOC provides no legal support for its position that jobs requiring more than minimal "movement" constitute a "class of jobs" or broad range of jobs." *See McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, (6th Cir.1997) (holding that manufacturing jobs requiring repetitive motion or frequent lifting of more than ten pounds do not constitute a class of jobs).

**8.** *See also McGeshick v. Principi*, 357 F.3d 1146, 1151 (10th Cir.2004) ("[T]he Secretary invited [the plaintiff] to apply for other jobs

within the VA, which would indicate that the VA actually did not perceive McGeshick as substantially limited in his ability to perform major life activities."); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1121 (5th Cir.1998) ("There is undisputed evidence which shows that [the defendant] attempted to place [the plaintiff] in other positions for which [the defendant] did not deem her disqualified due to her back condition. Such evidence could only permit a reasonable jury to conclude that [the defendant] believed [the plaintiff] to be qualified for other positions.").

**9.** Moreover, it is questionable whether Browning's opinion could support a finding of a "substantial limitation" on Diem's ability to work. In *Mahon v. Crowell*, 295 F.3d 585 (6th Cir.2002), this court held that an employee who suffered a back injury was not substantially limited in the major life activity of work even though an expert found that the employee "suffered a 47% loss of access to his job market." *Id.* at 591. The court reasoned, "We would be using a less-than-demanding standard were we to find [the employee] substantially limited in working when he is still

job offer does not show that DCC viewed Diem as significantly restricted in his ability to work. *See Rakity v. Dillon Cos., Inc.,* 302 F.3d 1152, 1163 (10th Cir.2002).

In sum, because the evidence demonstrates only that DCC regarded Diem as unable to perform the particular job of jitney repair mechanic, the EEOC has not created a genuine issue of material fact as to whether DCC regarded Diem as "substantially limited" in working.

### 4. *"Record Of" Disability*

■ The district court properly concluded that the EEOC has not created a genuine issue of material fact as to whether DCC withdrew its job offer because of Diem's "record of" disability. An individual has a "record of" disability if he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). The EEOC's Interpretative Guidance explains,

> This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records.

29 C.F.R. Pt. 1630, App. § 1630.2(k). This provision protects "people who have recovered from previously disabling conditions (cancer or coronary disease, for example) but who remain vulnerable to the fears and stereotypes of their employers." *David-*

*son v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 509 (7th Cir.1998).

The EEOC relies on three pieces of evidence to establish that DCC denied Diem employment based on a "record of" disability. First, on the "Self–Administered Medical History" form, Diem disclosed that he had undergone hip replacement surgery and that, either presently or in the past, he suffered "hip, knee, ankle, or foot trouble or injury," "hip, knee, ankle, or foot operation," and "[p]ainful or swollen joints." J.A. at 101. Second, on a "Preplacement Examination Insert" form, a DCC employee noted "left hip replacement due to arthritis in 1982." J.A. at 49, 52, 102. Third, according to Diem's testimony, Dr. Ray "pointed to my leg and wanted to know what the scar on my hip was, and I told him." J.A. at 125.

As the district court concluded, this evidence does not produce a genuine issue of material fact as to whether DCC rescinded its offer *because of* a record of disability. *Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 452 (6th Cir.2004) (stating that, to establish a prima facie case of disability discrimination, an ADA claimant must prove, among other elements, that he was not hired "solely by reason of" his disability). Soukup and operating management made the decision to withdraw the offer because they believed, incorrectly as it turns out, that Diem's current physical condition prevented him from performing the job of jitney repair mechanic. Soukup testified that she did not see a copy of the "Self–Administered Medical History," and the EEOC has not identified any evidence indicating that Soukup or operating management received the Preplacement Examination Insert form or any other documentation of Diem's hip replacement surgery.

qualified for over half the jobs he was qualified for before his injury." *Id.* at 592.

The EEOC responds that Ray testified that he bases his evaluations on a patient's medical history as well as on his examination.[10] Apparently, the EEOC means to argue that (1) from this testimony, a reasonable trier of fact could infer that Ray assigned the limitations to Diem based on his hip replacement surgery in 1982, not based on his physical examination of Diem, (2) Soukup and operating management revoked the offer based on Ray's evaluation, and (3) hence Soukup and operating management revoked the offer *because of* Diem's hip replacement surgery. However, only speculation permits the conclusion that Ray assigned the limitations to Diem because Diem had hip replacement surgery in 1982 rather than because he mistakenly believed that Diem's current physical condition prevented him from bending, twisting, stooping, and squatting.[11] In sum, the EEOC has not presented evidence permitting a reasonable trier of fact to conclude that DCC based its decision to withdraw its job offer on any "record" of disability.

---

**10.** Ray testified that he does not recall his examination of Diem. However, he further testified that, pursuant to his general practice, he would have considered Diem's medical history in making his evaluation.

**11.** Additionally, the EEOC has not shown that the "records" allegedly relied upon by DCC indicate that the hip replacement surgery "substantially limited" Diem in any major life activity in 1982. The forms merely report that Diem had surgery and had hip "trouble." The EEOC argues that the "records" need only "reflect[] the kind of impairment that *could* substantially limit one or more major life activities." EEOC Br. at 37 (emphasis added). However, the cases cited by the EEOC in support of its position do not address the issue. *Sch. Bd. of Nassau County, Florida v. Arline,* 480 U.S. 273, 281, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84,* 133 F.3d 1054, 1059 (7th Cir.1998); *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 510 n.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

MARTIN, Circuit Judge, dissenting.

I dissent because the Equal Employment Opportunity Commission has presented genuine issues of material fact in claiming that Daimler Chrysler "regarded" Diem as "disabled" within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. In my view, the Commission created the triable issue of whether Daimler Chrysler mistakenly believed that Diem had a physical impairment that substantially limited his ability to work. It showed that the employer thought that Diem's "perceived limitation would prevent him for performing a class or broad range of jobs," the plaintiff's standard correctly cited by the majority as the law in our circuit. *See Ross v. Campbell Soup Co.,* 237 F.3d 701, 709 (6th Cir. 2001). First, the Commission presented the testimony of Steven Venglarcik, who interviewed Diem for the jitney repair mechanic job, stating that he was told "that Diem

---

8 (7th Cir.1998). And other decisions, as well as an EEOC regulation, arguably stand for the proposition that an ADA plaintiff must demonstrate that the "record" relied upon by the defendant indicated that the past impairment *in fact* "substantially limited" the plaintiff in a major life activity. *See, e.g., Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.,* 242 F.3d 610, 615 (5th Cir.2001); *Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 961 (8th Cir. 2000) ("In order to have a record of disability, an employee's documentation must show that she has a history of or has been subject to misclassification as disabled." (internal quotation marks omitted)); 29 C.F.R. Pt. 1630, App. § 1630.2(k) ("This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment."). In any event, we need not reach this issue because the EEOC has not created a genuine issue of material fact as to whether DCC based its decision on the "records."

had job restrictions that prevented him from performing the normal duties of a jitney repair mechanic. As I recall there was concern that his hip might pop-out." As the majority acknowledges, from this evidence we may infer that his hip could not withstand the rigors of the job class— i.e., mechanic—for which he applied. Second, the Commission provides the affidavit testimony of Sherry Browning, a vocational rehabilitation counselor, who described Daimler Chrysler's perceived limitation as "restrictive," and one that barred Diem's access "to 40.6% of the skilled and semi-skilled job titled for which he has directly, closely, or generally transferable skills." She also explained that Diem "lost access to 21.6% of unskilled occupations." This evidence, in my view, is enough to withstand summary judgment. Therefore, I would reverse and remand for further proceedings.