NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0435n.06
Filed: May 25, 2005

No. 03-4226

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL DUNAWAY, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| FORD MOTOR COMPANY, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:    NELSON and BATCHELDER, Circuit Judges; COLLIER, District Judge.[*]

**CURTIS L. COLLIER, District Judge.**    Plaintiff-Appellant Michael Dunaway ("Dunaway") brought suit against Defendant-Appellee Ford Motor Company ("Ford"), alleging Ford refused to hire him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq.* Dunaway appeals the district court's dismissal of his case on Ford's motion for summary judgment. Because we conclude the district court was correct in its decision, we **AFFIRM** the district court's grant of summary judgment to Ford and dismissal of Dunaway's case.

---

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## I. FACTS AND PROCEDURAL BACKGROUND

Dunaway applied for the position of machine repairman at Ford's Sharonville, Ohio transmission plant in the fall of 1999. Dunaway had held machine repairman positions at other companies since 1980. Dunaway completed Ford's testing process, including a written test, interview, and hands-on test, and Ford found he had the requisite skills and abilities for the position. Ford offered Dunaway employment contingent on a pre-employment medical examination, conducted by Ford's in-house physician, Dr. Chun-I John-Lin. During this examination, Dunaway completed a health history form and volunteered to Dr. Lin he had injured his right knee while climbing a ladder at his home in 1998 or 1999. Upon further questioning by Dr. Lin, Dunaway revealed he had previously torn his Anterior Cruciate Ligament ("ACL") in that same knee, in 1978. Dunaway told Dr. Lin he experienced no continuing symptoms or problems from either of these injuries.

In light of these two knee injuries, and concerned this knee injury might be recurrent, Dr. Lin referred Dunaway for a magnetic resonance imaging test ("MRI") and consultation with an orthopedic specialist, Dr. Ron Koppenhoefer, at Ford's expense. Dr. Edward Horton read the MRI and issued a report to Ford indicating several problems with the knee. Dr. Koppenhoefer submitted a report and evaluation to Dr. Lin stating Dunaway had crepitation[1] in his right knee, and the MRI showed fluid build up. Dr. Koppenhoefer further diagnosed Dunaway with osteoarthritis[2] and stated it would become progressive and necessitate a total joint replacement. Dr. Koppenhoefer was

---

[1] Crepitation is cracking or creaking of a joint.

[2] Osteoarthritis is inflammation of a joint.

unable to state when Dunaway's knee would become more symptomatic, stating "it can occur within years or possibly decades." Dr. Koppenhoefer recommended the following limitations for Dunaway: no prolonged standing, squatting, kneeling, or climbing activities, and no lifting if twisting is involved. Dr. Lin, relying on this report, completed an "Ability to Work" form for Ford with the following restrictions: no prolonged standing, squatting, kneeling, or climbing, and no lifting over thirty pounds.

Ford's supervisor of labor relations and hourly personnel who reviewed Dunaway's "Ability to Work" form, John Abbey, was concerned Dunaway could not perform the required functions of the machine repairman position with the work restrictions Dr. Lin recommended. The essential functions of this position required prolonged stooping, kneeling, bending, climbing, and lifting 50-60 pounds on a daily basis to repair various machines, some of which are two stories tall. In addition, any machine repairman must be able to repair any machine "at a moment's notice," so Ford expected each repairman to perform all of these essential functions. Abbey consulted with Dr. Lin about whether any other machine repairman had the physical restrictions Dr. Lin had recommended, and Dr. Lin confirmed none did. Relying upon this information and his knowledge of the tasks performed by a machine repairman, Abbey determined Dunaway was unable to perform the tasks required by the position under Dr. Lin's restrictions and was at risk of further injury if he performed the tasks. Abbey decided not to hire Dunaway for these reasons.

Following Ford's refusal to hire him, Dunaway underwent two independent medical exams. First, Dr. John E. Turba, M.D., to whom Dunaway was referred by his family doctor, disagreed with Dr. Koppenhoefer's opinions and opined Dunaway was physically qualified to perform the duties

of the Machine Repairman job without restrictions or accommodations. Dunaway forwarded this report to Ford, and Dr. Lin forwarded it to Dr. Koppenhoefer, who reiterated his original assessment, finding Dr. Turba mainly disagreed with him about when, not whether, Dunaway's knee would become symptomatic. Dunaway then contacted Dr. Edward J. Berghausen, M.D., who also opined Dunaway could perform the machine repairman job, and Dunaway submitted this report to Abbey. Abbey informed Dunaway Ford was standing by its original assessment since Dunaway had not shown any change in his condition since its evaluations.

Dunaway filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on August 11, 2000. The EEOC issued him a right to sue letter on January 4, 2002, and Dunaway filed the present action on January 29, 2002, alleging Ford regarded him as disabled although he was qualified to perform the essential functions of the position for which he applied, and Ford relied on a perceived disability in refusing to hire him, in violation of the ADA, Ohio Rev. Code § 4112.02(A) and Ohio common law.

Ford filed a motion for summary judgment and Dunaway filed a motion for partial summary judgment as to liability. The district court granted Ford's motion and denied Dunaway's motion, dismissing Dunaway's case. Dunaway timely filed a notice of appeal from both of these decisions.

## II. STANDARD OF REVIEW

The Court reviews *de novo* a district court's order granting summary judgment. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c).  Initially, the burden is on the moving party to conclusively show no genuine issue of material fact exists, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment.  *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).  The standard for summary judgment mirrors the standard for directed verdict.  *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512.  There must be some probative evidence from which the jury could reasonably find for the nonmoving party.  If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment.  *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.

1994).

## III.  ANALYSIS

The ADA prohibits an employer from discriminating against a "qualified individual with a disability" because of that individual's disability.  42 U.S.C. § 12112(a).  The Ohio statute at issue makes it an unlawful discriminatory practice "for any employer, because of the. . . disability. . . of any person, to. . . discharge without just cause. . . or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  Ohio Rev. Code § 4112.02.  Because the essential elements of a claim are the same under the ADA and the Ohio statute, the Court will apply the same analysis to Dunaway's claims under the ADA and the Ohio statute. *See City of Columbus Civil Service Comm'n v. McGlone*, 697 N.E.2d 204, 206-207 (Ohio 1998).

Dunaway proceeds under a direct evidence theory because Ford has stated it relied on his knee condition in refusing to hire him.  In a direct evidence case, the plaintiff must show: (1) he has a disability; (2) he is otherwise qualified to perform the job's requirements, with or without reasonable accommodation; and (3) he was discriminated against solely because of the disability. *Williams v. London Util. Comm'n,* 375 F.3d 424, 428 (6th Cir. 2004).  If the plaintiff proves this prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination, then the burden shifts back to the employee to show the proffered reason was a pretext for unlawful disability discrimination. *Id.*

### A.  Disabled Within the Meaning of the ADA

To establish he was "disabled" within the meaning of the ADA, a plaintiff must show either: (1) he had an impairment that substantially limited one or more of his major life activities; (2) he had a record of such impairment; or (3) he was regarded as having such an impairment. 42 U.S.C. § 12102(2). Dunaway argues Ford regarded him as having a substantially limiting impairment, while in actuality, his knee condition was not so limiting as Ford believed.

In order to meet the "regarded as having such an impairment" definition of disabled, a plaintiff must show "1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or 2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489, 119 S. Ct. 2139, 2149-50 (1999). Dunaway argues he fits in the second category because Ford mistakenly believed his knee condition, which he asserts is an actual, nonlimiting impairment, substantially limits one or more of his major life activities.

Regulations issued to provide guidance for terms found in the ADA define "substantially limits" to mean a person is

> (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

29 C.F.R. § 1630.2(j)(1).[1]

---

[1]The Supreme Court several times has mentioned it has not determined what deference, if any, these regulations are due. *See Sutton*, 527 U.S. at 480; *Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 523 (1999); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 194 (2002). Because neither party in this case disputed their validity below, the district court relied on

These regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The EEOC in an interpretive Guidance on these regulations notes this list of major life activities is not exclusive, and added sitting, standing, reaching and lifting as examples of major life activities. 29 C.F.R. § 1630, App. § 1630.2(i).

The United States Supreme Court has held the terms "substantially limits" and "major life activity" must be "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). An impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the ADA. *Mahon v. Crowell,* 295 F.3d 585 (6th Cir. 2002).

### 1. Major Life Activities of Prolonged Standing, Climbing, Squatting, Kneeling, and Lifting More than 30 Pounds

The district court found Dunaway had not created a genuine issue of material fact about whether Ford regarded him as substantially limited in the major life activities of prolonged standing, climbing, squatting, kneeling, and lifting more than 30 pounds.[2]

Dunaway argues because the restrictions Dr. Lin placed on him would have substantially limited him in these major life activities, Ford regarded him as disabled. The inquiry in a regarded

them in making its decision, and the Court will refer to these regulations in this appeal.

[2] The district court held Dunaway had not created an issue of fact about whether Ford regarded him as disabled in part because it found any belief Ford had about Dunaway's inability to perform any of these activities was future-looking. Thus, the district court held Ford did not regard him as *presently* disabled at the time it made its decision. The Court need not evaluate the district court's requirement of a belief of present disability in a regarded as disabled case, since the District Court's decision will be upheld on other grounds.

as disabled case involves looking "to the state of mind of the employer against whom [the plaintiff] makes a claim. . . " *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001).[3] The district court held Dunaway presented no evidence anyone at Ford believed Dunaway was "unable to perform" or "significantly restricted as to the condition, manner or duration" in which he could perform any of these activities such that Ford mistakenly believed he was "substantially limited" in them. 29 C.F.R. § 1630.2(j)(1).

On appeal, Dunaway argues the decisionmaker, Abbey, did believe Dunaway was actually unable to perform the essential tasks of the job, including prolonged standing, climbing, squatting, kneeling, and lifting more than 30 pounds. Dunaway can cite only one small portion of Abbey's deposition in support of this argument, in which Abbey stated, ". . . it was clear to me he was unable to perform the essential functions [of the position]. . . based on the medical consultation" (JA at 214-15). Although Dunaway argues this shows Abbey made his decision based on Dunaway's inability to perform these tasks involved in the machine repairman job, the context in which this statement was made refers to whether he could perform these tasks *under the restrictions Dr. Lin had placed*

---

[3]Dunaway argues this Court's precedent requires this question of the employer's subjective intent be presented to a jury rather than disposed of on a motion for summary judgment. *See Ross*, 237 F.3d at 706 (". . . that question – i.e., the employer's motive, is one rarely susceptible to resolution at the summary judgment stage"). In *Ross*, the plaintiff presented substantial proof the employer relied on its misperception of disability and discriminatory animus in its decision about the plaintiff, such that motive was a factual issue. Here, Dunaway has not even presented a modicum of evidence the employer perceived him as disabled under the ADA or had a discriminatory motive in its decision not to hire him. Where there are no genuine disputes of material fact, even a subjective issue such as motive is proper for resolution on summary judgment, since the Court is not required to weigh evidence, make credibility determinations, or determine the truth of the matter. *See Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511; *Weaver*, 340 F.3d at 405.

*on him*, not whether he was physically able to perform the tasks. Dunaway did not present any evidence Abbey, Dr. Lin, or the other physicians ever asked him whether he could stand for prolonged periods, climb, squat, kneel, or lift more than 30 pounds, or required him to demonstrate his ability to perform those activities. The evidence in the record shows Dr. Koppenhoefer recommended and Dr. Lin adopted these restrictions to prevent future injury to Dunaway's knee, but does not show they considered Dunaway's ability to perform these activities.

Further, the Court's focus in the regarded as disabled inquiry is not on the defendant's belief about the plaintiff's ability to perform functions on the job, but rather the defendant's belief about "the effect of the impairment on the individual's daily life." *See Equal Opportunity Employment Comm'n v. Daimler Chrysler Corp.*, 111 Fed. Appx. 394, 399 (6th Cir. 2004) (unpublished opinion), citing *Williams*, 534 U.S. at 200-201; 122 S. Ct. at 693. A plaintiff must show the employer believed he was unable or significantly restricted in his ability to perform the activities at issue in his "daily life," not merely as part of the specific duties of the position for which he applied. Dunaway did not present any evidence the decisionmakers at Ford ever considered whether he was able to stand, climb, squat, kneel, or lift more than 30 pounds in his daily life *outside* of work.[4] As the district court stated, "The imposition of these restrictions for the purpose of employment in one position at Ford is not tantamount to a perception by Ford that plaintiff was unable to perform these restricted activities in his daily life" (District Court Order, JA at 174). Because Dunaway has not

---

[4]Dunaway points to a portion of Dr. Lin's deposition in which Dr. Lin testified he believed Dunaway was limited in these activities both inside and outside of work (Brf. of Appellant at 24), but failed to include the page to which he cites, page 34 of Dr. Lin's deposition, in the Joint Appendix.

presented the type of evidence necessary to support his argument Ford considered him substantially limited in his ability to perform the major life activities of prolonged standing, climbing, squatting, kneeling, and lifting more than 30 pounds in his daily life, the district court correctly held Dunaway did not create a genuine issue of fact as to whether Ford regarded him as disabled in those major life activities.

### 2.    Major Life Activity of Working

As an alternative to the major life activities of prolonged standing, climbing, squatting, kneeling, and lifting more than 30 pounds, Dunaway argues Ford regarded him as disabled in the major life activity of "working." Although the Supreme Court has expressed doubt about whether "working" is properly considered a major life activity under the ADA, *see Williams*, 534 U.S. at 199-200, 122 S. Ct. at 692-93; *Sutton*, 527 U.S. at 492, 119 S. Ct. at 2151, this Court has evaluated working as a major life activity under the ADA. *See Mahon*, 295 F.3d at 590 ("Because of the problems surrounding 'working,'. . . we shall treat it as suggested by the EEOC, as a residual category resorted to only when a complainant cannot show she or he is substantially impaired in any other, more concrete major life activity"); *Henderson v. Ardco, Inc*., 247 F.3d 645, 652 (6th Cir. 2001) (plaintiff presented genuine issue of fact on her claim she was regarded as disabled in the major life activity of working); *Ross*, 237 F.3d at 709 (same).[5] However, this Court also has noted how difficult it is for a plaintiff to prevail on such a claim:

---

[5]Ford in its brief stated it "does not concede" working is a major life activity under the ADA, but did not present any arguments that working is not a major life activity under the ADA (Brf. of Appellee at 26).

> Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind. Thus, proving the case becomes extraordinarily difficult. Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs. As it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations, the plaintiff's task becomes even more difficult.

*Ross,* 237 F.3d at 709 (6th Cir. 2001).

The Supreme Court has set out the requirements for a plaintiff claiming the employer regarded him as disabled in the major life activity of working:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton*, 527 U.S. at 492, 119 S. Ct. at 2151.

Dunaway argues Ford must have regarded him as disabled because under the restrictions Ford placed on him, he would be precluded from performing a broad class of jobs for which his education and experience qualified him, which he characterizes as the class of machine repairman jobs.[6] However, Dunaway has not presented any evidence of the physical requirements of this class

---

[6] This Court has required a plaintiff to define the "broad range of jobs" from which he is precluded by presenting evidence of "the geographical area in which the person may obtain employment and the number and type of jobs in that area utilizing similar training, knowledge, and skills." *Cannon v. Levi Strauss & Co.*, 29 Fed. Appx. 331, 334 (6th Cir. 2002). Dunaway has presented no such evidence. However, because Dunaway's argument on this point fails for other reasons, the Court need not decide whether machine repairman actually is a "broad range of jobs," or whether it is merely "one type of job, a specialized job, or a particular job of choice." *Sutton*, 527

of jobs, which would enable him to show Ford's restrictions would have precluded him from them.

Rather, Dunaway merely presents his own testimony on the physical requirements of Ford's machine

repairman job and the machine repairman jobs he personally has held. As the district court found,

this attempt by Dunaway to impute the physical requirements of Ford's and the other machine

repairman positions he had held onto all such positions in the geographic area in which he could

work is an improper approach, one that was rejected by the Supreme Court in *Sutton*. *See Sutton*,

527 U.S. at 493. This testimony does not constitute evidence Ford's restrictions would have

precluded him from obtaining similar machine repairman positions, so Ford must have regarded him

as disabled in the major life activity of working.

Dunaway could alternatively have presented an expert's testimony as to the percentage of

jobs in the broad class of jobs the employer's restrictions would prevent him from performing, as

the plaintiff in *Mahon* did. In that case, the plaintiff's own expert found, even in his impaired state,

he could work in 53% of the job market for which he was qualified. *Mahon*, 295 F.3d at 591.

Because he could still perform more than half of the jobs for which he was qualified, however, this

Court found he was not precluded from a broad range of jobs and not limited in the major life

activity of working. *Id.* Dunaway also has not presented any expert testimony about the percentage

of jobs from which Ford's restrictions would preclude him as this Court approved in *Mahon*.

The district court properly rejected Dunaway's argument, holding Dunaway did not present

evidence creating a genuine dispute as to whether Ford's restrictions would have precluded him

---

U.S. at 492, 119 S. Ct. at 2151.

from the major life activity of working in the class of machine repairman jobs. Without creating a genuine dispute of material fact on whether he was regarded as disabled under the ADA, either in the major life activities of prolonged standing, climbing, squatting, kneeling, and lifting more than 30 pounds or working, Dunaway cannot prove even the first prong of his prima facie case of discrimination in violation of the ADA or Ohio laws. The district court's grant of summary judgment in Ford's favor was proper.

## IV. CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the District Court's grant of summary judgment to Ford and denial of summary judgment to Dunaway.