Cheryl A. WILLIS, Plaintiff,

v.

HARTZELL PROPELLER INC., Defendant.

No. 3:03cv110.

United States District Court,
S.D. Ohio,
Western Division.

July 6, 2007.

John Francis Lenehan, Dayton, OH, for Plaintiff.

Brad Alan Chalker, Dayton, OH, for Defendant.

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR EXEMPTION FROM ELECTRONIC FILING (DOC. # 24) AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 22); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

Cheryl Willis ("Willis" or "Plaintiff") brings claims under federal and state law arising out of her termination from her employment with Hartzell Propeller, Inc. ("Hartzell" or "Defendant"). Specifically, Plaintiff's Amended Complaint alleges that her termination, in retaliation for her having taken leave to undergo surgery, was a willful violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (the "FMLA"), as well as a wrongful discharge under Ohio public policy embodied in the

FMLA. Her Amended Complaint also alleges that her termination was in violation of the federal Americans with Disabilities Act ("ADA"), as well as Ohio disability law, Ohio Rev.Code § 4112.01. Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1367.

In a recent entry, this Court sustained Defendant's motion to dismiss with respect to Plaintiff's claims under the ADA and Ohio public policy under the FMLA, as well as her claim under the FMLA itself, to the extent of a non-willful (i.e., ordinary) violation (Doc. # 20). The matter is currently before the Court on Defendant's Motion for Summary Judgment (Doc. # 22) as to Plaintiff's remaining claims, to wit: willful violation of the FMLA and wrongful discharge under Ohio disability law.[1] For the reasons that follow, Defendant's motion is sustained.

## I. *Background*[2]

Plaintiff commenced employment with Defendant in September of 1998, as an Administrative Assistant in Defendant's Engineering Department. In April of 2000, she became the Administrative Assistant in the Quality Systems and Compliance Department. She describes her job duties to have consisted of word processing, coordination, department filing and miscellaneous (Affidavit of Cheryl Willis ("Willis Affidavit") (Doc. # 24, Ex. 1) at ¶ 2). In that position, her direct supervisors were Jerry Seay, Vice President of Quality Systems, and Kirk Meier, Director of Quality Assurance.

In December, 2000, Plaintiff discovered that she needed to have surgery on her shoulder, at which time she informed Seay and Meier, as well as Jolene Dugnolle, of Defendant's Personnel Department. On January 2, 2001, Plaintiff informed Personnel of the date of her surgery, which was January 15, 2001. Theresa Bean, an assistant to Dugnolle, processed Plaintiff's paperwork, and on an unspecified date (presumably sometime between January 2, and January 15), Plaintiff's FMLA leave was approved.[3] Plaintiff's surgery occurred on January 15, 2001, as planned.

Plaintiff returned to work on March 20, 2001, with restrictions on lifting (Willis Affidavit at ¶ 14). At that time, she was informed by her supervisors that her job duties had been given to other people. Accordingly, she was given the choice between working on a part-time basis, in which she would work three hours per day, or leaving her job altogether. Defendant's decision to offer Plaintiff the choice between part-time work and discharge was made pursuant to consultation with its employment law attorney regarding Defendant's legal responsibilities under, *inter alia*, the FMLA, with respect to Plaintiff (Second Affidavit of A. Jolene Dugnolle ("Second Dugnolle Affidavit") (Doc. # 23, Ex. 5) at ¶¶ 4–5). Accepting employment on a part-time basis would have resulted in the discontinuation of her health benefits, whereas accepting discharge would have enabled her to keep her health insurance for two months. Plaintiff chose the latter course.

---

1. Plaintiff's Response to Defendant's Motion for Summary Judgment was received by the Court, but not yet filed, pending this Court's decision on its Motion for Exemption from Electronic Filing (Doc. # 24). That motion is hereby sustained, and the Response has been considered in this ruling.

2. For purposes of ruling on the Defendant's Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the Plaintiff, who is the non-moving party.

3. As explained *infra*, under the FMLA, eligible employees are entitled to a total of 12 work-weeks of medical leave in any 12–month period.

During Plaintiff's absence, her duties were assumed by Lisa Klopfenstein. According to Meier, due to automation, systems streamlining and "a general downturn in the company's workload," the Administrative Assistant position evolved into a part-time position. Further, during this time, according to Meier, Klopfenstein took, on average, 20 hours per week to complete the job duties of said position (Affidavit of Kirk Meier ("Meier Affidavit") (Doc. # 23, Ex. 2) at ¶ 3).[4] Upon Plaintiff's return to work, it was expected that she would perform her job duties in accordance with the work-hours "benchmark" set by Klopfenstein (*Id.* at ¶ 5).

## II. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and

affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the

---

**4.** Plaintiff's other supervisors concur that Klopfenstein assumed all of Plaintiff's job duties in her absence, and that she was able to accomplish said duties in 20 hours per

week. *See* Affidavit of Jerry Seay ("Seay Affidavit") (Doc. # 23 Ex. 1) at ¶ 3, Affidavit of A. Jolene Dugnolle ("Dugnolle Affidavit") (Doc. # 23, Ex. 3 at ¶ 3).

plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Analysis*

#### A. *FMLA Claim*

29 U.S.C. § 2612(a)(1)(D) provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following: ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." Section 2611 defines an "eligible employee" as, "an employee who has been employed for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title." 29 U.S.C. § 2611(2)(A)(i). "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303. The FMLA further provides that it is unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]" or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." 29 U.S.C.A. § 2615(a). Finally, the FMLA utilizes a two-tiered statute of limitations, wherein an action may be brought under the Act "not later than 2 years after the date of the last event con-

stituting the alleged violation for which the action is brought," excepting that "[i]n the case of such action brought for willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c).

In its previous entry in this matter on Defendant's motion to dismiss, the Court analyzed Defendant's arguments that Plaintiff's FMLA claim was time-barred. The Court held that Plaintiff's claim was indeed time-barred with respect to an ordinary violation of the FMLA, but not with respect to a willful violation of same. The Court made no other findings as to the legal sufficiency of Plaintiff's claim under the FMLA.[5]

▮ In an ordinary FMLA case, in order to make a prima facie showing of discrimination at the summary judgment stage, a plaintiff must adduce facts giving rise to genuine issues as to whether: 1) she engaged in an activity protected by the FMLA; 2) her exercise of this right was known by her employer; 3) thereafter, her employer took an employment action adverse to her; and 4) there was a causal connection between the protected activity and the adverse employment action. *See Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314–15 (6th Cir. 2001). Of course, Plaintiff's allegation that Defendant's violation of the FMLA herein was willful introduces a fifth element to her prima facie case. The standard for

determining whether a violation of the FMLA was willful is whether the employer knew or showed reckless disregard as to whether its conduct was prohibited by the statute. *Williams v. Northwest Airlines, Inc.*, 2002 WL 31856089 (6th Cir.2002), *cert. denied*, 538 U.S. 1061, 123 S.Ct. 2224, 155 L.Ed.2d 1114 (2003), *citing McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). *See also, Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir.2003).

The Court believes (and Defendant does not appear to contest) that Plaintiff meets the first three elements of a prima facie case for discrimination under the FMLA. Specifically, there is no serious dispute that Plaintiff exercised her rights under the FMLA, that Defendant knew of such, and that an employment action was taken by Defendant that was adverse to Plaintiff.[6]

▮ With respect to causation, Defendant argues that Plaintiff has offered no direct evidence demonstrating a causal relationship between the exercise of her rights under the FMLA and the negative employment action. However, instead of offering direct evidence in support of said causal relationship, Plaintiff relies upon the proximity in time ·between her exercise of her FMLA rights and her discharge. This is a form of circumstantial evidence that, in a case of an ordinary violation of the FMLA, would satisfy Plaintiff's prima facie case, resulting in the shifting of the burden to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's discharge. In the event that Defendant did so, the burden would shift back to

---

5. Accordingly, Defendant is incorrect in asserting that the Court, in its prior entry, resolved in Defendant's favor the issue of whether Plaintiff has presented a prima facie showing (Doc. # 25 at 1).

6. As explained more fully in the previous entry, the Court understands Plaintiff's allegation under the FMLA to be that she was constructively terminated, in that the offer of part-time employment was not a legitimate alternative to being discharged. *See* Doc. # 20 at 9–10.

Plaintiff to show that Defendant's articulated reason was a pretext for discrimination. *See, e.g., Skrjanc,* 272 F.3d at 315 (applying the Supreme Court's well known burden-shifting test from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to analyze the plaintiff's claim that he was fired in violation of the FMLA for taking sick leave).

■ However, because this case involves a willful violation of the FMLA, Plaintiff's prima facie case herein requires a showing that Defendant acted willfully. With respect to this requirement, Defendant argues that its conduct was not willful in that it sought, and acted in accordance with, advice from its employment law attorney regarding compliance with the FMLA with respect to Plaintiff (Second Dugnolle Affidavit at ¶ 4–5). In the context of employment discrimination, the Supreme Court has agreed that an employer's consultation with its attorney regarding a potential adverse employment action negates willfulness. In *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Court reviewed a case under the Age Discrimination in Employment Act ("ADEA") in which an employer, in devising a retirement policy, was required to navigate between the ADEA on the one hand, and a collective bargaining agreement on the other. In doing so, the company sought legal advice as to its obligations under the ADEA. Employing the same standard for willfulness at issue in the case *sub judice,* the Court therein held that said legal consultation refuted the argument that the employer had acted in reckless disregard of the statute. 469 U.S. at 130, 105 S.Ct. at 626, 83 L.Ed.2d 523.

In response, Plaintiff does little more than re-argue the other elements of her case. Specifically, she asserts that Defendant's actions pertaining to the streamlining of her job during her absence were intentional and that its claim that Plaintiff's job only required part-time work was "utter nonsense" (Doc. # 24 at 8). Reiterating the circumstantial evidence in support of her argument that the termination was in retaliation for taking FMLA leave, Plaintiff concludes that "[t]he offer of part-time employment, certainly, wasn't a mistake. It was a carefully planned termination" (*Id.* at 9). The Court doubts that Defendant contests that its decision was planned, at least in part, given that its defense is that the decision was based on consultation with its attorney. As to whether Defendant's consultation with its attorney negated a willful violation of the statute, Plaintiff asserts that said claim is "interesting," but also "insulting," because "[i]t is obvious that the employer acted willfully in this case" (*Id.*). The Court disagrees, however, that it is obvious, and without any explanation from Plaintiff as to why it is obvious, the Court is unable to evaluate her claim as Plaintiff would wish. Further, the Court does not believe that reciting the circumstances surrounding the alleged violation, once again, suffices to demonstrate a genuine issue of material fact as to willfulness. Instead, as explained, the standard for willfulness requires evidence that the employer acted with knowledge as to whether its conduct violated the statute or in reckless disregard of same. Moreover, the Court agrees that Defendant's consultation with its attorney supports its claim that it did not act willfully. Quite simply, Plaintiff has failed to make any showing to the contrary.[7]

Because there is no genuine issue of material fact as to whether Defendant will-

---

**7.** Plaintiff does offer the Affidavit of Rachel Williams (Doc. # 24), who was employed, via a corporate education program at her high school, by Hartzell as a Secretarial Assistant for Plaintiff during her tenure there. Williams indicates that, shortly after being terminated by Hartzell, she heard from Nata-

fully violated the FMLA, summary judgment is proper with respect to Plaintiff's claim under that statute.

## B. *Ohio Disability Claim*

██ Plaintiff also alleges that her termination was in violation of Ohio Revised Code § 4112.02, which, *inter alia,* makes it unlawful for an employer to discharge without just cause or discriminate against an employee due to a disability. The Ohio Supreme Court has indicated that, in order to establish a prima facie case of disability discrimination under § 4112.02, a plaintiff must demonstrate 1) that she was disabled, 2) that an adverse employment action was taken by her employer, at least in part, because she was disabled, and 3) that she, though disabled, can safely and substantially perform the essential functions of the job in question. *Hood v. Diamond Products, Inc.,* 74 Ohio St.3d 298, 302, 658 N.E.2d 738, 741 (Ohio 1996), *citing Hazlett v. Martin Chevrolet, Inc.,* 25 Ohio St.3d

279, 281, 496 N.E.2d 478, 480 (Ohio 1986). Similar to the analysis of federal employment discrimination claims, once a plaintiff establishes a prima facie case of disability discrimination under § 4112.02, the burden shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. Likewise, if the employer establishes such a nondiscriminatory reason for the action taken, then the burden returns to the employee to show that the employer's stated reason is pretextual. *Id., citing Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.,* 66 Ohio St.2d 192, 197, 421 N.E.2d 128, 132 (Ohio 1981).

Defendant advances three arguments in support of summary judgment. *First,* it argues that Plaintiff was not disabled under the statute. *Second,* it argues that there was no causal relationship between Plaintiff's purported disability and the adverse employment action. *Third,* it argues that, even assuming that Plaintiff has established a prima facie case of discrimi-

---

lie Jaqua that Plaintiff was going to be "let go because she had been on sick leave" (*Id.* at ¶ 3). Jaqua worked as an assistant at Hartzell through the same high school program as Williams, and heard this information from Shonda Swallow, who, according to Williams, was "a clerk or secretary in the Technical Writing Department" (*Id.*). Clearly, each of the statements relied upon by Williams is an out-of-court statement and is offered for the truth of the matter asserted. Furthermore, the Court does not believe that the statements are non-hearsay under Fed.R.Evid. 801(d)(2)(D), which permits a court to admit out-of-court statements that are offered against a party and which are made by a party's agent or employee concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

The Sixth Circuit addressed a highly analogous situation in *Hill v. Spiegel,* 708 F.2d 233 (6th Cir.1983), which dealt with employment discrimination under the ADEA. Therein, the district court had admitted testimony, pursuant to Rule 801(d)(2)(D), from a former dis-

trict manager of the defendant corporation that three other employees had said that the plaintiff was discharged due to his age and income. The Sixth Circuit analyzed the scope of employment of each of the three declarants and concluded that none had a position within the company such that matters concerning the plaintiff's discharge were within the scope of his employment. Accordingly, the court held that their statements regarding the plaintiff's discharge could not be considered as vicarious admissions by the defendant, and that the district court had committed reversible error by admitting them as evidence.

Since Plaintiff has made no showing that the statements of Jaqua (who appears to be little more than a paid intern hired to perform administrative tasks) and Swallow (who was a clerk or secretary in a wholly different department than the one in which Plaintiff was employed) were made within the scope of their employment, said statements do not fall into the category of non-hearsay carved out by Rule 801(d)(2)(D). Therefore, the Court does not consider them in addressing Defendant's motion for summary judgment.

nation, a legitimate, nondiscriminatory purpose exists, in that changed business conditions,[8] and not Plaintiff's disability, led to her termination.

■ Under Ohio law, an employee is disabled if she has a

> medically diagnosable, abnormal condition which is expected to continue for a considerable length of time, whether correctable or uncorrectable by good medical practice, which can reasonably be expected to limit the person's functional ability, including, but not limited to, seeing, hearing, thinking, ambulating, climbing, descending, lifting, grasping, sitting, rising, any related function, or any limitation due to weakness and significantly decreased endurance, so that [s]he can not perform his everyday routine living and working without significantly increased hardship and vulnerability to what are considered the everyday obstacles and hazards encountered by the nonhandicapped.

Ohio Rev.Code § 4112.01(A)(13). Defendant asserts that there is no evidence that, when Plaintiff returned to work from her sick leave, she was precluded from any work activity at Hartzell or that she was disabled under any definition found in § 4112. However, in her Affidavit, Plaintiff reports that, upon her return to work, she was indeed placed under lifting restrictions by her doctor. As noted *supra*, a limitation of an employee's ability to lift is expressly included in § 4112's definition of disability. Accordingly, the Court cannot conclude that no genuine issue of fact exists as to whether Plaintiff was disabled when she returned to work.

■ In disputing the existence of a causal relationship between Plaintiff's disability and the adverse employment action taken with respect to her, Defendant repeats its explanation that it was the change in business conditions (including the recent automation and systems streamlining) that caused Plaintiff's job to be converted from full-time to part-time. It is uncertain to the Court what, if any, Plaintiff's response to this is. Other than arguing that she was disabled under the statute and that she endured an adverse employment action (which Defendant does not appear to dispute), her only argument in support of her Ohio disability claim is that "upon her return to work she could have performed the job with minor limitations" (Doc. #24 at 10). Undoubtedly, Defendant does not dispute this, in that it offered Plaintiff the opportunity to perform her job, albeit with a limitation on the number of hours that she might work. Regardless, the Court finds no support in the record for the proposition that the adverse employment action was related to any disability suffered by Plaintiff.

Because Plaintiff has failed to show that a genuine issue of material fact exists as to whether she has presented a prima facie case of discrimination under § 4112, the Court need not address Defendant's final argument, regarding a nondiscriminatory reason for the adverse employment action.[9]

---

8. Specifically, as described *supra*, said changed business conditions included automation, systems streamlining and "a general downturn in the company's workload."

9. Further, even were the Court to address this argument, it seems apparent that Defendant has offered a legitimate, nondiscriminatory reason for its action. Specifically, as noted, Defendant's stated reasons for the adverse employment action were automation, systems streamlining and a downturn in business. Not only is there support in the record for this in the form of affidavits, as described *supra*, but Defendant's actual conduct upon Plaintiff's return to work (i.e., its offer of allowing her to return to her same job, albeit with reduced hours) is wholly consistent with its contention that its business had suffered. Finally, Plaintiff has pointed to no portion of the record in support of the proposition that Defendant's reason is pretextual.

Accordingly, summary judgment is proper with respect to Plaintiff's disability claim under Ohio law.

IV. *Conclusion*

For the reasons assigned herein, summary judgment is proper with respect to Plaintiff's claim of willful violation of the FMLA, as well as her claim under Ohio disability law. Accordingly, judgment will be entered in favor of Defendant and against Plaintiff.

The captioned cause is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.